ISAAC D. FOUKE vs. ANDREW J. FLEMING and
JONATHAN E. DOUGLASS.

A deed conveying certain specified articles of personal property, to a trus-
tee, with power to sell the same, and from the proceeds pay certain
specified debts, and the residue to the grantor, is a *quasi mortgage*, and
not a voluntary assignment of all the grantor's property, for the benefit
of his creditors generally.

In such a deed, the reservation of the surplus to the grantor, after paying
the particular debts, does not render it void, as this gives to the debtor
nothing more than he is entitled to in the case of a *technical mortgage*,
nor is the validity of such a deed, in other respects, to be tested by the
law applicable to *voluntary conveyances* by debtors, for the payment of
their debts, exacting releases.

A citizen of Virginia, *residing therein*, having personal property in Mary-
land, and *being here temporarily*, may execute a conveyance of such
property in the county where it is, at the time, and such a deed, acknowl-
edged and recorded agreeably to the laws of Maryland, is valid against
an attaching creditor of the grantor, in the absence of any proof of the
laws of Virginia making it otherwise.

A *temporary* or *transient residence* by a citizen of another State, in a county
of this State, where his personal property is, at the time, situated, is
such a residence as amounts to a compliance with the provisions of the
act of 1856, ch. 154, requiring bills of sale or mortgages, to be acknowl-
edged and recorded in the county where the party executing the same
*resides*.

No affidavit as to the consideration of a *bill of sale* or *mortgage of personal
property* is now required; such affidavits are *expressly* dispensed with, by
the act of 1856, ch. 154, secs. 128 and 142, and the provisions of these
sections are in no way repealed or affected by the act of 1856, ch. 113,
passed on the *same day*.

Where the engrossed bill, and the published copy of a law correspond, this
court cannot assume they are *erroneous*, and decide the law to be accord-
ing to the evidence of the proceedings of the Legislature, as furnished
by the *journals* of the two Houses.

An engrossed bill, according to the practice of our Legislature, is exam-
ined by a committee of the house in which it originated, then assented
to, as engrossed, by both Houses, and signed by the Governor, with
the seal of State annexed, and this is better evidence of what a law is,
than the journals of the two branches, each journal being kept and at-
tested *only*, by the chief clerk of his particular branch.

APPEAL from the Circuit Court for Washington county.

*Attachment* on warrant, issued on the 6th of March 1857,

at the instance of the appellees, against Israel Russell, a non-resident debtor. The claim stated in the writ is $629.41. The writ was laid on the 7th of March 1857, on two canal boats, as the property of the defendant Russell. The appellant, Fouke, came in and claimed the property under the following deed from Russell to him:

"This deed, made this 30th day of January, in the year 1857, by Israel Russell of Jefferson county, in the State of Virginia, witnesseth." It then recites Russell's indebtedness to H. Herr, of Jefferson county, Virginia, on two notes under seal, one for $200, and the other for $500, on both of which Joseph L. Russell and Jacob T. Russell, are his sureties, and also his indebtedness to Hartley & Brother, of Georgetown, in the District of Columbia, in the sum of $520.14, on a promissory note, on which Joseph L. Russell and Jonathan Russell, are his sureties, and also his indebtedness to S. B. Preston, of Frederick county, Maryland, in the sum of $150, upon an order accepted by him. It then proceeds: "And, whereas, the said Israel Russell, is anxious to pay and satisfy to the said Abraham Herr, Hartley & Brother, and Samuel B. Preston, and to indemnify and save harmless his said sureties, has proposed and agreed to assign the property hereinafter mentioned, unto Isaac Fouke, of Jefferson county, in the State of Virginia, in trust, for the payment of the aforesaid notes and indebtedness. Now, therefore, the said Israel Russell, doth grant unto the said Isaac Fouke, his executors, administrators and assigns, the following property, that is to say; canal boat 'James F. Essex', with all the furniture, implements, apparatus, &c., belonging to the same; canal boat 'J. F. Wheatley,' with all the furniture, apparatus, &c., belonging to the same; also one lot of fish tubs, about one hundred and twenty in number; also one lot of fish barrels about forty in number; also a lot of ropes, and block and tackle, and three lots of boat gears; which said property is situated in Washington county, State of Maryland. To have and to hold the said property above described and granted, to him the said Isaac Fouke, his executors, administrators and assigns, in trust, however, to sell and dispose of the same at public or private

sale, and upon such terms and notice as he may deem most expedient; and it is hereby declared, that the said Isaac Fouke, shall stand possessed of the money arising from said sale or sales, upon trust, in the first place to the payment of all costs, charges and expenses, he may incur in the execution and creation of this trust, including a commission of five per cent. to himself as trustee; secondly, in trust that he shall apply the residue of said money, in payment and satisfaction of the several debts due to the said Abraham H. Herr, Hartley & Brother, and Samuel B. Preston, hereinbefore mentioned, *pari passu* and without any preference or priority of payment; and after the payment or satisfaction of the said debts, costs and expenses, then in trust, that he shall pay the surplus, if any, unto the said Israel Russell, his executors, administrators or assigns." The deed then contains a covenant, that Fouke "shall not be in any manner responsible for any accident, loss or deterioration of the said property, nor for any thing, except for the faithful application of the money which shall actually come into his hands, or for wilful and gross neglect," and also a covenant for further assurances and conveyances, "for the purpose of carrying out and effectuating the object and design of the aforesaid deed of trust."

This deed was acknowledged before a justice of the peace in and for Washington county, on the same day it was executed, and on the same day was recorded among the land records of Washington county, but there was no *affidavit* that the consideration therein set forth was true and *bona fide.*

*Exception.* In the trial of the case, upon issue made upon this claim of Fouke, certain admissions and agreements of facts were entered into, which are fully stated in the opinion of this court. The question in the case was as to the validity of this deed  The court below, (PERRY J.,) granted an instruction to the jury, at the instance of the plaintiffs, (which is also stated in the opinion of this court,) to the effect, that the deed was void as against the plaintiffs, the creditors of Russell. To the granting of this prayer the claimant excepted, and appealed from the judgment of condemnation, on verdict in favor of the plaintiffs.

Fouke vs. Fleming & Douglass.

The cause was argued before Le Grand, C. J., Eccleston and Bartol, J.

A. K. *Syester* and Z. H. *Clagett* for the appellant.

The sole question in this case relates to the validity of the deed from Russell to Fouke, and the appellant insists upon its validity.

1st. Because it is a mere pledge or hypothecation of particular property to pay particular debts. This deed may be taken as a mortgage, created in the form of a deed of trust, to secure a debt and indemnify a surety. That deeds in this form have been held to be mortgages, see 15 *New York Rep.*, 207, *Curtis, et al., vs. Leavitt; 1 Selden*, 547, *King vs. Merchants Exchange Co.; 4 Watts & Sergt.*, 383, *Ridgway vs. Stewart; 7 Watts & Sergt.*, 343, *Manufacturers & Mechanics Bank vs. Bank of Pennsylvania; 3 Md. Rep.*, 82, *Charles vs. Clagett*. And the express reservation of the surplus is nothing more than the operation of the law would be without it; it is precisely what takes place in every mortgage.

2nd. Because this deed cannot, in any sense, be regarded as an assignment by a debtor in failing circumstances, for the benefit of creditors, and its invalidity cannot be tested by the rules applicable to such instruments. It has none of the marks of such an instrument; it does not say so, and there is nothing upon its face (beyond which we cannot look) to fix that character upon it. Its whole design, and its only object, is to secure the payment of a debt and to indemnify and save harmless certain sureties. It does not exact releases from the creditors, and does not profess to convey *all* the grantor's property, and is, in fact, nothing more than the assignment of particular property to pay a particular debt, which it is the undoubted right of every debtor to do. All the authorities clearly establish a distinction between a *general assignment* by a man in failing circumstances, for the benefit of his creditors, and a particular assignment of specific property, for the benefit of particular creditors. This distinction is clearly recognized in the case of *Green & Trammell vs. Trieber*, 3 *Md. Rep.*, 30, 31, 36, 38, and runs through all the Maryland cases cited by

the appellee. See also 5 *Term Rep.*, 420, *Estwick vs. Caillaud.* 10 *Paige*, 461, *Dias vs. Bouchaud.* 15 *New York Rep.*, 126, 127. 4 *Watts & Sergt.*, 383. 7 *Watts & Sergt.*, 343. 3 *Sumner*, 345, *United States vs. McLellan, et al.* There is no badge of fraud in the case,—nothing to show that the grantor was in insolvent circumstances, and the resulting trust, in favor of the grantor, is only what the law implies from every mortgage, and can, in no sense, be regarded as an indication of fraud. 15 *New York Rep.*, 117, 127, 128, 132, 205. 3 *Md. Rep.*, 48, *Sangston vs. Gaither.*

3rd. Because there is no valid legal objection to the acknowledgment of the deed. The conveyancing law of 1856, ch. 154, secs. 129 and 142, declare that such an instrument, if acknowledged within the State, may be acknowledged before any one justice of the peace of the county or city in which the grantor *resides*. A temporary *residence* is all that is here meant. It is true that the general rule is, that a transfer of personal property, good by the law of the owner's *domicil*, is valid wherever else the property may be situate; but it does not follow that a transfer made by the owner, according to the law of the place of its actual *situs*, would not as completely divest his title; nor even that a transfer by him, in a foreign country, which would be good, according to the law of that country, would not be equally effectual, although he might not have his *domicil* there. For purpose of transfer his personal property may, in many cases, be deemed subject to his disposal wherever he may happen to be at the time of alienation. *Story's Conf. of Laws*, secs. 384, 392. See, also, 2 *H. & McH.*, 46, *Sim & Lee's Lessee vs. Deakins.* 7 *Md. Rep.*, 214, *Field vs. Adreon, et al.* 1 *Md. Rep.*, 519, *Bryan, et al., vs. Hawthorne, et al.*

4th. Because no affidavit to a bill of sale or mortgage of personalty is required. The act of 1856, ch. 154, secs. 128 and 142 is emphatic: "No affidavit is required." The volume of printed laws, published by authority, is as reliable in demonstrating what the law is, in a given case, as an exemplification of the record itself, verified by the officer who is the keeper of the record. 1 *Greenlf. on Ev.*, sec., 480, and the

authorities there cited. The printed laws are made evidence of the law. The journal of proceedings, therefore, by which it is supposed, by some, that the law is not as found in the printed volume, cannot be resorted to for any such purpose. If the journal of proceedings could be introduced to contradict the plain and explicit language of the statute, it would be making the *journal* the best evidence of the law—placing it above the record itself, and investing it with those legislative sanctions which the Constitution declares shall be received by the statute. The journal cannot be brought forward to contradict the statute without clothing it with sanctions superior to the statute itself. We can find no authority that looks to such a state of things as that. The two acts then of 1854, ch. 113, and ch. 154 must be construed with reference to the question before us. We think the act of 1854, ch. 154, ought to be controlling. It was intended to be *the Act* on the subject, and has always been so regarded. Its *design* was to present the general law, and, of course, to control and overrule everything in conflict with it. The title shows this. The forms and rules applicable to conveyancing were intended to be simplified and abridged. The whole *history* of the act demonstrates that it was intended to embrace the controlling principles and rules on the subject. The Legislature have preserved the spirit of the report presented by the commissioners, by enacting the law in the very words, except in unimportant particulars, in which it came before it. It is the general controlling law on the subject, and can only be repealed by something *equally authoritative*, and explicitly and emphatically in conflict with its own language. The act of 1854, ch. 113, though equal in authority, is not direct and positive in its language. If that act shall control the direct and emphatic words of ch. 154, then those words are to be stricken from the body of the statute by *implication* or by *inference*. It is submitted, that such a result cannot take place. The case is stronger than where the direct words are sought to be avoided on the theory that they are repealed. The two acts were passed on the same day, as appears by the printed laws. The one assumes the existence of a statute which the other

repeals. The one *imposes forms and burthens by implication or inference*, which the other, in strong and positive language, abrogates and abolishes; and where the intention of the Legislature is doubtful, courts will always incline against that construction or view which imposes a burthen. *Broom's Legal Maxims*, 439, and the authorities there cited. Again, the court ought to uphold this conveyance, because it is in conformity with the printed laws, and if a mode differing from that prescribed by the statute, to which the profession and public have always looked for the law, shall be prescribed by the court, it will have the effect to unsettle most of the titles acquired since the passage of the act, and produce ruinous litigation.

*R. H. Alvey* for the appellees argued, that the deed in question is void as against the appellees, the creditors of the grantor:

1st. It is not a mortgage and has none of the attributes of a mortgage, but is, as it expressly purports to be, a voluntary deed of trust for the benefit of certain creditors, and the grantor himself, to the exclusion of all his other creditors. Its object was to pay prior debts, and not to raise money, and hence, it comes within the case of *Green & Trammell vs. Trieber*, 3 *Md. Rep.*, 11. It reserves the surplus proceeds of the property to the grantor himself, after discharging the specific claims, without in any way providing for his other debts, and is, therefore, *ipso facto, et constructione legis*, void. The creditors are entitled to the benefit of the whole estate of the debtor, and cannot be compelled to resort to a part of it only, and any attempt of the debtor to place any part of his property beyond the reach of his creditors, and for his own benefit, is a fraud, and avoids the instrument by which it is sought to be effected. 3 *Md. Rep.*, 50, 51, *Sangston vs. Gaither.* 2 *Comstock*, 370, *Barney vs. Griffin.* 6 *Hill.*, 438, *Goodrich vs. Downs.* The legal presumption from making such an instrument as this, must be, and is, that the debtor did not intend his creditors, other than those specifically provided for, to have any benefit of the property conveyed; for if he had intended to

Fouke *vs.* Fleming & Douglass.

devote his property to the honest purpose of paying all his debts, the most proper and reasonable mode of accomplishing it, would have been by making provision for all in the same deed. 3 *Md. Rep.*, 31. 5 *G. & J.*, 456, *Birely vs. Staley.* And *non constat* the grantor, Russell, owned any other property at the time of making this assignment, than that conveyed, and were it a question of fact, dependent upon the sufficiency of the property of the debtor, other than that assigned, to pay all his debts, it would be incumbent upon the appellant, to establish the fact of such sufficiency, before the assignment could be relieved from the imputation of fraud. 3 *Md. Rep.*, 53. 5 *G. & J.*, 455. 9 *Gill*, 449, *Worthington vs. Shipley.* It is not, however, a question of fact, but a question of law, presented by the face of the deed itself. It is immaterial, how the question of fraud in fact may stand; and the court will not look outside the deed, to ascertain the circumstances of the debtor, or whether there will be or not a surplus, after paying off the debts provided for by the assignment. 3 *Md. Rep.*, 40, 53. 8 *Md. Rep.*, 418, *Malcolm vs. Hodges.* 11 *Md. Rep.*, 183, *Inloes vs. American Exchange Bank.* If, by possibility, the assignment could operate prejudicially to the plaintiffs, by locking up property of their debtor, or obstructing the usual process of making it liable to their claims, it is, in legal contemplation, an unlawful hindrance and delay, such as will avoid the deed.

2nd. But the deed is wholly void as against the appellees on another ground. It has been neither legally acknowledged or recorded. The property attempted to be conveyed was personal, and while both the grantor and the grantee reside in the State of Virginia, the deed has been acknowledged and recorded in Washington county, Maryland, and not in, and according to the law of, the State where the parties resided. As the property was personal, and as such, transferable by the law of the domicil of the grantor, the acknowledgment and recording of the deed in Maryland, were nugatory acts, having no legal effect as against the appellees. Assuming the law of Virginia to be the same as that of Maryland, the deed should have been acknowledged and recorded in the former

State, instead of the latter. 12 *Md. Rep.*, 54, *Wilson vs. Carson.* 9 *Md. Rep.*, 194, *Haney vs. Marshall.* 1 *H. & J.*, 14, *Gittings vs. Hall.* 2 *H. & J.*, 380, *Hall vs. Gittings.* 2 *Gill*, 150, *Byer vs. Etnyre. Acts of* 1715, *ch.* 47, *sec.* 9; 1766, *ch.* 14, *sec.* 4, and 1807, *ch.* 52. The policy and reason of the registry laws only apply to the legal *situs* of the property, and in, the case of personalty, the only legal *situs* is the *domicil* of the owner.

3rd. But if this deed be treated as a mere mortgage and not as a deed of trust, it then becomes liable to the insuperable objection, that it has no affidavit, as to the *bona fides* of the consideration that induced its execution. It is true, the act of 1856,-ch. 154, as it has been printed and published, dispenses with the affidavit; but it is manifest, that such could not have been the intention of the Legislature, for on the same day with the passage of that act, we find another, ch. 113, was passed, entitled "An act amendatory of an act, entitled an act to prevent frauds in mortgages and bills of sale, passed at December session 1846, ch. 271." By this act, passed on the same day with the one, ch. 154, it is provided: "That whenever *any deed of mortgage or bill of sale* shall be executed in favor of several persons jointly, the affidavit of any one of the mortgagees or grantees, named in the said mortgage or bill of sale, indorsed on said mortgage or bill of sale, that the consideration therein set forth, is true and *bona fide*, shall render such mortgage or bill of sale as valid and effective as if said affidavit had been made by all of said mortgagees or grantees, *as now required by the original act of which this is amendatory*," &c. This amendatory act is general, and applies to all mortgages and bills of sale. It cannot be said to apply to mortgages of real estate only, and thus make it consist with ch. 154; for in addition to the general comprehensive terms employed, it embraces bills of sale, which, as well as mortgages of personal property, are, by ch. 154, declared to be good without the affidavit.

Now, which of these two acts is to be taken as declaratory of the legislative will and intent? The act, ch. 113, seems to have been made upon deliberation, and for the correction of

inconveniences which had been found to exist. It certainly gives no evidence of any intention on the part of the Legislature to depart from the policy and requirements of the previous law, farther than the alteration effected by the amendatory act. Of these two acts, appearing by the printed volume of laws to have been passed on the same day, which received the last reading and was last put to vote, cannot be ascertained, unless we go to the proceedings of the Legislature, and if we do that, we find at once that the provisions of ch. 154, dispensing with the affidavit, both as to mortgages of personalty and bills of sale, were stricken out of the act, as originally prepared and reported, and that, in fact, they are no part of the law as it was enacted by the two branches of the Legislature, and that in lieu of the dispensative provisions, as they now stand in the printed copy of the law, provisions were adopted, expressly requiring the affidavit to be made to all mortgages of personal property and bills of sale. See Senate Journal of 1856, pages 233, 234, and House Journal, pages 497, 498. It is apparent then, that ch. 154, as it has been printed and published, only dispenses with the affidavit, because of the misprision or carelessness of the engrossing clerk, or the blunders of the printer, and not because the Legislature intended it to be so, but directly the contrary. If the legislative will is at all material to be arrived at, to enable us to put a proper construction upon these conflicting acts, it would seem that our only recourse is, to ascertain what was really enacted as law, and to do this, we have no better means than the journals of the two houses of the Legislature, which contain and give evidence of the exact expression of intent of these two bodies.

But if we are concluded by the mere copyist or the printer, and not permitted to go behind the printed volume of the laws which the Legislature never saw, what is to be the interpretation, where two laws pass upon the same day and upon the same subject, directly opposite in their provisions? There is no fraction of a day in legislative proceedings, and, therefore, neither law can be insisted on as the last expression of intent. Standing then upon an equality, as the simultaneous expres-

sion of will and design, which is to be the most favored, the statute which, *by implication only*, repeals a previously enacted and then existing statute, or the statute which expressly recognises and makes further provision to such existing law? This seems to be the question as between the two statutes now under consideration. There are two principles in the construction of statutes, that, to my apprehension, have a controlling application to this question. The first is, that all statutes in *pari materia*, are construed as one law, in order to arrive at the intention of the Legislature; and the second is, that repeals of statutes by implication, are things disfavored by law and never allowed, but when the inconsistency and repugnancy *are plain and unavoidable.* 4 *G. & J.*, 128, 152, *Canal Co. vs. Rail Road Co.* 19 *Viner's Abr.*, 525, *pl.* 132. It follows as a corollary of this latter proposition, that if the Legislature have left the matter in doubt, as to what rule shall obtain, the court will rather adhere to and maintain by construction the former law, and with it the amendment thereto, passed simultaneously with the law in apparent conflict, than declare that former law and its amendments repealed by doubtful implication. I say doubtful, because it certainly passes our understandings, if we are confined to the printed statute book, to determine which of two contemporaneous statutes speak the will of the Legislature. The argument on the other side would place the Legislature in the position of having, on the same day and by the same exertion of their power, provided *how* a thing should be done, and saying that it shall *not* be done, an absolute inconsistency which cannot be imputed to them. Again, if ch. 154, renders the affidavit needless as to mortgages of personalty and bills of sale, then the provisions of ch. 113, in relation to these matters, are useless and perfectly nugatory, because they have nothing upon which they can operate.

EccLESTON, J., delivered the opinion of this court.

In this case an attachment was issued, at the instance of the appellees, out of the Circuit court for Washington county, in March 1857, against Israel Russell, and was laid on two canal boats.

The attachment being returned, Isaac Fouke, the appellant, appeared as claimant of the property attached, asserting his claim, under a deed made to him by said Russell, prior to the issuing of the attachment.

At the trial, in support of his claim, the appellant offered the deed from Russell, bearing date the 30th of January 1857, for the two canal boats, and other articles of personal property. It was recorded in one of the land record books of Washington county, Maryland, on the day of its date, after it had been acknowledged by Russell, on the same day, before a justice of the peace of the State of Maryland, in and for Washington county: the signing, sealing and delivery of which deed were admitted by the plaintiff. And, by agreement of the parties, the same was read to the jury, subject to all objections as to its admissibility and legal effect and validity, to be raised by prayers.

It was agreed that the debt, for which the attachment issued, was due and owing before, and on the day of the date of the deed, and also at the time of the issuing of the attachment; that the writ of attachment states the correct amount of such indebtedness; and further, that Israel Russell, the defendant, was, at the time of issuing the attachment, a resident and citizen of the State of Virginia.

It was admitted that the property attached is the same, or part of the same, mentioned in the deed, and that the attachment proceedings were regular.

At the instance of the plaintiffs' counsel the court gave the following instruction:

"That the said deed of assignment offered in evidence, and read as aforesaid, is void in law as against the plaintiffs, if the jury find, that the said Israel Russell, the assignor, was, at the time of making said assignment, indebted to the said plaintiffs on the claim for which the attachment issued in this cause."

To the granting of this instruction the claimant, Fouke, excepted, and upon the rendition of the verdict and judgment against him, he appealed.

The question to be decided is, whether the deed from Russell to Fouke, transferred to the latter such a title to the pro-

perty in dispute, as should have prevented a judgment of condemnation thereof, under the attachment; or in other words, whether the deed was void as against the appellees.

They insist that it is, and in support of this position they rely upon the principles established by the following cases: *Green & Trammell vs. Trieber, 3 Md. Rep., 11. Sangston vs. Gaither, 3 Ibid., 40. Malcolm vs. Hodges, 8 Ibid., 418,* and *Inloes vs. American Exchange Bank, 11 Ibid., 173.*

In *Green & Trammell vs. Trieber,* the grantor's deed included all his property, and he was insolvent at the date of the deed. He "reserved to himself the possession and enjoyment of all his property for at least six, perhaps for twenty-four months, and, indeed, for an indefinite time, if the trustees should not think proper to sell, and none of the preferred creditors should require the sale to be made. He also reserved to himself the surplus, after payment of the claims of the assenting creditors, and of Brady, (whose assent was not required,) to the exclusion of all other creditors, who could, in no event, obtain any part of their claims by the provisions of the deed, and these benefits, confined as they were to such of the named creditors as might assent, were extended to them only on the condition that they would, while the debtor was using and enjoying the property, grant further time on their claims against him."

In *Sangston vs. Gaither,* the deed recited the indebtedness of the grantor to various firms and persons, and his desire to provide for paying the same. It conveyed the property, in trust, to be distributed to each creditor who should elect, within sixty days from the date of the deed, to come in and share in the trust, and should also file a sufficient release to the debtor, with the trustee, (and no other creditor whatsoever,) such a dividend of the assets as he should be found entitled to, in the proportion of the whole of the debts thereinbefore scheduled, to the whole amount of the nett assets. And the deed also provided, that the dividends, or proportions which would have been payable to such creditors, if any, as should not have released, should be retained by the trustee in such distribution, and paid over to the grantor, leaving such

creditors to their ordinary legal remedy against him.   The surplus, if any, "after paying the debts aforesaid," was to be paid to the grantor.   In that case it did not plainly appear whether the deed was an assignment of all the debtor's property or not.   And there, as in a former case, the court said, "that an assignment for the benefit of creditors, exacting releases as the condition on which they might participate in the fund, must transfer all the debtor's estate."   Nevertheless there the deed exacted releases, and also reserved to the debtor the dividends of such creditors as might neglect or refuse to execute releases.   He likewise reserved to himself any surplus which might remain after satisfying the creditors named in the deed.   See *pages* 46, 48 and 49 of 3 *Md. Rep.*

In *Malcolm vs. Hodges,* the deed professed to convey all the estate and effects of the grantors, in trust for those of their creditors, who should, on or before a certain day, sign a release to the debtors, from all their individual and co-partnership liabilities to the said creditors.   It was held, that such a deed "must not only convey all the property of the debtor, but must, in terms, dedicate the whole for the benefit of the creditors, subject to such preferences as might be declared in the deed.   And there must not be any reservation to the debtor, express or implied."

Inasmuch as the deed expressly restricted the application of the trust funds for creditors, to those creditors only who might come in within a certain time and execute releases, and nothing being said in regard to any surplus, the surplus, if any, would result to the debtor.   The deed was, therefore, considered void, because there was an implied reservation of such surplus to the grantor.

In *Inloes vs. American Exchange Bank,* the provision which avoided the deed was that which gave the trustee power, at his discretion, to sell the property conveyed by the deed, consisting of a stock of goods in trade, "*gradually in the manner and on the terms in which, in course of their business,*" the grantors "*had sold and disposed of their merchandize.*"

In reference to the deed before us there is nothing from

which we can consider it to be a general assignment of all the grantor's property, for the benefit of his creditors generally, or that he was in insolvent circumstances. It exacts no releases, nor does it reserve the property for his use and enjoyment, either for a short or long period of time, but gives authority to the trustee "*to sell and dispose of the same at public or private sale, and upon such terms and notice as he may deem most expedient.*"

Instead of regarding this, (as insisted upon by the appellees,) a deed of trust or assignment for the creditors generally, of the grantor, it is, in our opinion, simply a deed of trust, or *quasi* mortgage, designed to secure the payment of a few specified debts due to the firm of Hartley & Brother, and to two individuals, Abraham Herr and Samuel B. Preston, and also to indemnify and save harmless Joseph L. Russell, and Jonathan Russell, as the sureties of the grantor for some of those debts.

In *Green & Trammell, vs. Trieber,* the court say: "We must observe the distinction between conveyances of the whole or a part of the debtor's property, as a security for particular debts, on an agreement with the creditors for further time, and voluntary conveyances by debtors for the payment of their debts."

Believing this to be a conveyance, designed only "as a security for particular debts," and not a voluntary conveyance by a debtor for the payment of his debts generally, and regarding it as a *quasi* mortgage, as has been previously said, we do not think that a reservation of the surplus to the grantor, after paying those particular debts, can render the deed void. Such a reservation will secure to the debtor nothing more than he would be entitled to in the case of a technical mortgage, if the mortgaged property should be sold for payment of the mortgage debts, leaving a surplus of proceeds of sale beyond the amount required to satisfy the mortgagees' claims.

Nor do we perceive in this conveyance any defect, making it void, upon the principles established by the decisions in the cases referred to, and much relied upon by the counsel for the appellees, as showing this deed to be void. It differs, essentially, from each of the deeds held to be void in those cases.

The validity of the deed has been objected to, because the grantor was a citizen and resident of Virginia, at the date of it; because it was executed and acknowledged before a justice of the peace of the State of Maryland, in and for Washington county, and recorded in said county, the property included in the instrument, and now in dispute, being then in that county.

The appellees say, this being personal property, and the grantor a resident of Virginia, the law of that State must prevail. But this cannot be true, when there is no proof of what is the law of Virginia on the subject; and, in the absence of such proof, we must be governed by our own law.

The act of 1856, ch. 154, sec. 129, provides, that "A bill of sale, if acknowledged within the State, may be acknowledged before any one justice of the peace, or judge of the orphans court, of the county or city in which the vendor resides."

The next section says: "If acknowledged out of the State, before any officer authorized to take acknowledgments of deeds."

Section 131 says: "Bills of sale shall be recorded in the county or city where the vendor or donor resides, within twenty days from the date."

Section 142 provides, that "Mortgages of personal property shall be acknowledged and recorded in the same manner as bills of sale."

Supposing the Maryland law to prevail, then the counsel for the appellees says, the instrument under consideration, if either a bill of sale or mortgage of personal property, it was neither acknowledged nor recorded, according to the requirements of the act just referred to. It was acknowledged and recorded in this State, but not in the county where the vendor, grantor or mortgagor resided, and could not be, because he resided in Virginia. This defect, it was contended, must render the instrument inoperative as against the attachment.

The question presented is, if a citizen of a sister State, residing therein, having personal property in Maryland, and being here temporarily, executes and acknowledges a conveyance of the property in the county where it is, at the time, and the conveyance is there recorded within twenty days from

its date, is such an instrument valid as against an attaching creditor of the grantor, in the absence of any proof of the laws of the sister State, making the conveyance otherwise? We think it is. In saying this we must not be understood as holding, that if a citizen of this State were to acknowledge and have recorded a similar conveyance, in a county where he did not reside, it would be valid.

*Sim and Lee's Lessee vs. Deakins,* 2 *H. & McH.,* 46, was an ejectment for two tracts of land lying in Washington county. A deed for those lands, to the lessors of the plaintiff, from Jeremiah Warder, of Philadelphia, was offered in evidence. It appeared to be acknowledged in Cecil county, Maryland, before two of the justices of Cecil county court.

It was proved that Warder resided in Pennsylvania; that he was personally present, and executed and acknowledged the deed in Cecil county, before two magistrates of the said county; and that the lands were in Washington county.

The deed was objected to as not having been acknowledged according to the act of 1766, ch. 14.

The 2nd section of that act made provision for the acknowledgment of deeds in the Provincial Court, or before one of the justices thereof, in the county court, or before two justices of the same county where the lands were.

The 3rd section provided for cases where persons making deeds should live remote from the Provincial Court, or out of the county where the lands were lying. And such persons were authorized to acknowledge the deeds in the county "wherein he, she or they, should reside."

The 4th section provided for the case of non-residents, and authorizing their deeds to be acknowledged by letter of attorney.

The counsel for the defendant contended, that the expression *reside,* used in the act, meant where a person had his continual, ordinary or usual habitation. That the grantor in the deed in question could not be considered as a resident of the county where the acknowledgment was made, but was merely a traveller from or to his usual place of residence.

The plaintiffs' counsel insisted, that the residence is equivo-

Fouke *vs.* Fleming & Douglass.

cal, and might mean either a general or temporary residence, according to the subject matter. So that if the nature of the subject be such as to require a general or constant residence, then it should be expounded to mean such a residence. And, on the contrary, the subject being transient or of a temporary nature, it would require but a temporary residence. It was also argued, that the resident of Pennsylvania, by merely coming into this State, gained a residence *pro hac vice,* within the intent and meaning of the law.

The General Court decided, that the deed and acknowledgment should be read in evidence to the jury, and declared that it was sufficient in law to convey the lands therein mentioned. And the Court of Appeals affirmed the judgment of the General Court.

The act of July session, 1779, ch. 8, in establishing a mode to perpetuate testimony, provides, that the depositions of witnesses may be taken "before a judge of the General Court, or justice of the county, where *such witnesses respectively reside.*"

In *Bryden vs. Taylor,* 2 *H. & J.,* 396, it appears the General Court held, that this act "did not require an efficient residence, such as would make a person a domicil, qualify him to vote or to be capable of holding an office; but a temporary or transient residence was sufficient." Which decision was affirmed by the Court of Appeals.

The case of *Hall vs. Gittings,* 2 *H. & J.,* 380, has been referred to by the appellees' counsel as being opposed to the decision in *Sim & Lee's Lessee vs. Deakins.* But there is a difference between those cases. In one the deed was acknowledged in this State by a citizen of Pennsylvania, in the other, it was acknowledged by a citizen of Maryland, and not in Anne Arundel county, where he had his principal residence, where he voted, served on juries, and was enrolled in the militia, but at Belle-Air, in Prince Georges, a county adjoining to Anne Arundel. The proof showed, that Ogle, the grantor in the deed, with his family, temporarily resided at Belle-Air, during the summer and autumn, sometimes for a longer and sometimes for a shorter time; that the day on which the deed was executed, Ogle, with his wife, for a short time only, stop-

52      v. 13.

ped at Belle-Air, on their way to or from Anne Arundel county, and during their continuance at Belle-Air the deed was there executed; that immediately after the execution and acknowledgment of the deed, he and his wife left Prince Georges county, and he did not go thither with his family to remain during a part of the summer and autumn, according to his custom, until several weeks after the time of executing the deed.

The General Court instructed the jury, if they should find the facts thus stated, that then the deed was good and valid in law to pass and transfer all the interest of Ogle, in the land, to Bosley, the grantee.

After giving the instruction, it is added: "The court do not say, that a person going from one county to another can acknowledge a deed for lands lying in a different county, but a temporary residence, and not a mere transitory residence, is sufficient for that purpose."

The lands included in the deed were situate in Baltimore county.

Upon appeal the above instruction was reversed, but the reasons for the reversal are not reported. It may be that the Court of Appeals did not consider the facts stated as presenting the case of even a *temporary* residence, but merely a *transient* residence, or the mere going from one county to another, in the State, by a resident of Maryland, at the time the deed was acknowledged. The case, certainly, was one in relation to a citizen and permanent resident of this State, and not to a citizen and resident of another State coming into this and acknowledging a deed relating either to lands or personal estate.

The act of 1809, ch. 168, provides for the acknowledgment and recording of receipts, acquittances, releases or final discharges, of executors, administrators and guardians, from any heir, representative or legatee, of full age, or other person authorized to execute the same, and enacts, that all such instruments, "which shall have been acknowledged before any justice of the peace, or register of wills of the county wherein such heir, representative, legatee, or other person, authorized to execute the same, *resides,* may be recorded."

In *Carroll vs. Tyler*, 2 *H. & G.*, 54, copies of two receipts, certified by the register of wills for Prince Georges county, were offered in evidence and objected to as being inadmissible, because it did not appear that the persons giving and acknowledging the receipts *resided* in the county where the acknowledgments were made. The court overruled the objection, and the defendant excepted.

The Court of Appeals say: "The copies offered were duly attested under the seal of the recording office, and appear to us to have been acknowledged and recorded agreeably to the act of 1809, ch. 168."

In reference to the particular ground of objection, it is said: "The place of their residence does not appear on the face of the acknowledgment, but that they were in *Prince Georges* county, at the time of making it, is clear, for else it could not have been made before the register of wills of that county. This indicates a temporary or transient residence, which we consider sufficient, at least, in the absence of proof of actual residence elsewhere." Then reference is made to *Bryden vs. Taylor*, as authority.

In *Field, et al., vs. Adreon, et al., Garn. of Kennedy*, 7 *Md. Rep.*, 209, it was held, that although Kennedy, an unnaturalized foreigner, residing and doing business in this State, was not a citizen for every purpose, and in every sense, yet, for commercial or business purposes, Kennedy "was a *citizen* of this State in contemplation of our attachment system."

The cases which have been referred to seem to sanction the propriety of deciding, that Israel Russell, although a citizen of Virginia, having his general or habitual residence there, should be considered as having a temporary residence here, or such a residence as will gratify the requirements of the act of 1856, in relation to such an instrument as the one in question; and that he acquired such a residence by coming into Maryland, executing and acknowledging the conveyance, the same having been recorded the day it was acknowledged.

Believing, as we do, that the temporary residence of Israel Russell was such a residence as amounted to a compliance with the provisions of the act requiring a bill of sale or mort-

gage to be acknowledged and recorded in the county where the party executing the same resides, the general rule, which considers the *situs* or permanent domicil of the owner of personal property to be the *situs* of such property, and when his permanent domicil is in one State, and the property in another, the property is to be governed by the law of the owner's domicil, cannot operate in this case so as to render this conveyance void. *Story* in his *Conflict of Laws, sec.* 384, holds, very explicitly, that when a person, having his domicil in one country, owns personal property in another, if personally present where the property is *actually situate*, at the time, a transfer of the same, made by him according to the law of the place where he makes the transfer, will be valid and binding. See also *note 2, to section* 364, *of the Conflict of Laws, on pages* 605, 606, *(Ed. of* 1846.)

A further objection to the validity of the deed, or conveyance, is, that there is no endorsement thereon of any affidavit, that the consideration therein set forth is true and *bona fide.* But this objection must be overruled. The 128th section of the Act of 1856, in very express terms declares, that no such affidavit shall be required in relation to a bill of sale. And the 142nd section of the same Act, when speaking of mortgages of personal property, says: "No affidavit, as to the consideration, shall be required." These provisions, dispensing with the affidavit, are contained in the engrossed bill, and in the law, as published; but, nevertheless, it has been contended, that they are not, in reality, parts of the Act, as passed by the Legislature, and should not be considered as parts of the law. In support of this view it is said, that the original bill, as reported, contained the sections which dispense with the affidavit, both as to bills of sale and mortgages of personal property, as now contained in the printed copy of the Act, but that the bill was amended in the Senate, by striking out the provisions in the 128th and 142nd sections, which dispense with the affidavit, as to the consideration, and adopting other provisions in lieu of them, expressly requiring the affidavit, both in relation to bills of sale and mortgages of personal property; which amendments of the Senate were assented to by the

House of Delegates; and that they were included in the bill, as finally passed, may be seen by reference to the Senate journal of 1856, pages 233, 234, and the House journal, of same session. pages 497, 498.

Seeing that the engrossed bill and the published copy of the law correspond, we do not feel authorised to assume they are erroneous, and decide the law to be according to the evidence of the proceedings of the Legislature, as furnished by the journals of the two Houses.

An engrossed bill, according to the practice of legislation in this State, is examined by a committee of the house in which it originated, then the bill, as engrossed, is assented to by both houses, then attested by the chief clerk of each house and signed by the Governor, with the seal of the State annexed. All this would seem to be better evidence of what a law is than the journals of the two branches of the Legislature, each journal being kept and attested only by the chief clerk of his particular branch.    See also the Act of 1845, ch. 89.

But assuming the law, as published, to be correct, still, it is insisted, that, when viewed in connection with chapter 113, of the same session and passed the same day, the 154th chapter should not be construed as dispensing with the necessity for the affidavit.

Chapter 113 is entitled, "An Act amendatory of an Act entitled, an Act to prevent frauds in mortgages and bills of sale, passed at December session eighteen hundred and forty-six, chapter two hundred and seventy-one." Its first section provides, that where there are several mortgagees or grantees, the affidavit of any one of them shall make the instrument as valid as if the affidavit had been made by all the mortgagees, or grantees, as required by the original act.    It also declares, that any mortgage or bill of sale, executed since the passage of the original act, which should show, upon its face, that the affidavit had been made by one of the mortgagees or grantees, should be as valid as if it had been made by all of them.

The second section allows the affidavit to be made by an agent or attorney, where the mortgagees or mortgagee, grantees or grantee, should not reside in the county or city in

Fouke *vs.* Fleming & Douglass.

which it should be necessary to record the mortgage or bill of sale.

This act was evidently designed, chiefly to remedy evils or inconveniences supposed to result from the provisions of the original act, to which it was made amendatory, and certainly does not, in terms, appear to have been passed in reference to the 154th chapter of the same session. By merely providing how the affidavit may be made, it surely cannot be construed as repealing those provisions of chapter 154, which declare, most explicitly, that an affidavit shall not be required for a bill of sale, or a mortgage of personal property.

In speaking of these two acts we shall, for convenience, designate chapter 113, as the first, and chapter 154 as the second law.

The 3d sec. of the first act makes it take effect from the date of its passage. The second contains no provision as to when it should go into effect, and, of course, it did not do so until the first day of June 1856.

It has been said, that when the two acts are seen to have been passed on the same day, it cannot be supposed the Legislature intended the second should be construed as rendering an affidavit to bills of sale and mortgages of personal estate wholly unnecessary, when, at the same time, by the first act, they provided how the affidavit might be made in relation to the same instruments. And it has been urged in argument, that the proper interpretation of the two laws must be, to require the affidavit, because the opposite theory would be to stultify the Legislature, by imputing to it the absolute inconsistency of providing how a thing may be done, and declaring, at the same time, that it shall not be done. And further, if the second act renders the affidavit needless, as to bills of sale and mortgages of personal estate, then the provisions of the first, in relation to those instruments, are useless and perfectly nugatory, having nothing on which they can operate, although such instruments, which might be made after the passage of that act, are provided for by it. An interpretation of a law, which must render some of its provisions nugatory, it is contended, should be avoided, as far as practicable. But construing the

second law as dispensing with the affidavit, will not render the first utterly nugatory and useless, as has been supposed, with reference to bills of sale and mortgages of personal estate, executed subsequently to that act. We have seen .that the second did not take effect until the first of June 1856, and the other did on the 8th of March preceding, (being the day of its passage,) and therefore its provisions would operate upon any of the instruments alluded to, which may have been executed between the dates above mentioned. The sections of the second law, in regard to such instruments, can have no influence or effect upon the provisions of the first, which relate to mortgages of real estate, or to those in reference to a mortgage of. any sort, or a bill of sale, made prior to that act and after the passage of the original act, mentioned therein.

Thus, it will be seen, the second act may be construed as dispensing with the affidavit, as to the consideration of a bill of sale or mortgage of personal property, without rendering any of the provisions of the first act perfectly nugatory and useless, for the want of subjects on which they could operate.

We consider the conveyance, executed by Israel Russell to the appellant, valid, and the instruction given by the court below erroneous; the judgment therefore must be reversed, and no procedendo will be awarded.

*Judgment reversed and no procedendo awarded.*
(Decided May 31st, 1859.)