THE MAYOR AND CITY COUNCIL OF BALTI-
MORE, A MUNICIPAL CORPORATION; R. M. COOK-
SEY, HIGHWAYS ENGINEER; WILLIAM C. PAGE,
CITY COLLECTOR, AND THE JUDGES OF THE AP-
PEAL TAX COURT OF BALTIMORE CITY,

*vs.*

THE FIRST METHODIST EPISCOPAL CHURCH OF
BALTIMORE CITY.

*Municipal ordinances: rule for determining correct passage; pre-
sumption from proper authentication; parol testi-
mony and journals.*

Whether an ordinance has been passed in accordance with the
provisions of the charter of a municipal corporation is to be
decided by the same rules that govern courts in determining
whether an Act of the Legislature has been passed in accordance
with the Constitution.                                    p. 603

The presumption of the validity of an ordinance arising from
its due authentication in accordance with the City Charter,
can not be overcome by parol testimony or the evidence fur-
nished by the journals of the two branches of the City Council
alone.                                                   p. 603

*Decided June 24th, 1919.*

Appeal from the Baltimore City Court. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, URNER and ADKINS, JJ.

*George Arnold Frick* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellants.

*John Watson, Jr.* (with whom were *Hyland P. Stewart* and *Warren A. Stewart,* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from an order of the Baltimore City Court quashing the proceedings of the Highways Engineer and the Appeal Tax Court of Baltimore City, in which the appellee was assessed with the cost of repaving the sidewalk in front of its property, etc. The ground of the motion to quash and of the order appealed from was that Ordinance No. 266, in pursuance of which the assessment was made, was not passed by the City Council and was not a valid ordinance of the Mayor and City Council of Baltimore.

At the hearing of the motion to quash, the appellee, the appellant in the Court below, produced C. Charles Friedel, Chief Clerk of the Second Branch of the City Council, and also produced certified copies of the journals of the two branches of the City Council, from which it appears that the ordinance in question, Ordinance No. 266, was introduced in the Second Branch as Ordinance S. B. No. 149 on March 19th, 1917, and was referred to the Joint Standing Committee on Highways. It also appears from the journals that after a favorable report by that committee the ordinance was read the first time on April 30th, 1917, and on May 7th, 1917, it was read the second time and ordered to be engrossed for its third reading. On May 14th, 1917, it was read the third time and passed, the vote being taken "by yeas and nays" and the names of members voting entered upon the journal. It was then sent to the First Branch, where it was read the first time on May 14th, and the second time on May 21st, 1917. When it was taken up in the First Branch for its third reading, on May 24th, two amendments were proposed and adopted, and the ordinance, with the amendments, was then read the third time and passed by a yea and nay

vote. On the same day it was returned to the Second Branch, with a message stating that the "accompanying" amendments had been made, setting out the amendments and stating how they should be inserted in the ordinance. The journal of the Second Branch also stated that on the 24th of May, 1917, the "President laid before the Branch the Second Branch ordinance (S. B. No. 149)," with the message from the First Branch, and that on motion of Mr. Mahon the amendments made by the First Branch were adopted by a yea and nay vote.

In addition to the journals, the appellee offered in evidence two other ordinances, Ordinance F. B. No. 374 and Ordinance F. B. No. 375, the entries in the journals showing that they had been passed by the City Council and the message of the Mayor giving his reasons for not approving the same. One of these ordinances was an ordinance to repeal Ordinance No. 266, and the other was an ordinance which recited in its preamble that the amendments offered to Ordinance No. 266 had been erroneously omitted, and which contained the provisions of Ordinance No. 266, as amended.

The appellee also offered in evidence the original Ordinance S. B. 149 and the engrossed Ordinance No. 266, which was approved by the Mayor. They were in the custody of the City Register and were produced by him. The engrossed ordinance, which is in the "exact language" of the original, bears the following endorsements: "Introduced, title read and referred to J. S. C.—C. C. Friedel, Chief Clerk" (J. S. C. meaning Joint Standing Committee on Highways); "In Second Branch, April 30, 1917, read first time and laid over under the rule"; "In Second Branch, May 7, 1917, taken up, read second time and ordered to be engrossed, by order, C. C. Friedel, Chief Clerk"; "May 14, 1917, taken up, read third time and passed, by order, C. C. Friedel, Chief Clerk"; "In First Branch, May 14, 1917, read and laid over under the rule, by order, Gilbert A. Dailey, Clerk"; "In First Branch, May 21, 1917, taken up, read second time and laid over under the rule, by order, Gilbert A. Dailey, Clerk"; "In

First Branch, May 24, 1917, taken up, read third time and passed, by order, Gilbert A. Dailey, Clerk"; "Examined and found correct by Committee on Enrollment," signed by the Committee on Enrollment, and also signed by the Presidents of the two branches of the City Council. There was attached to it the following certificates:

"SECOND BRANCH ORDINANCE S. B. 149.

"I hereby certify that Ordinance S. B. No. 149 was duly passed in accordance with the requirements of the City Charter, as will be seen by reference to the following entries:

"Second Branch.

"First Reading, date April 30, 1917; Second Branch Journal, pages 575-578.

"Second Reading, date May 7, 1917; Second Branch Journal, page 595.

"Third Reading date May 14, 1917; Second Branch Journal, pages 603-604.

"First Branch.

"First Reading, dated May 14, 1917; First Branch Journal, page 768.

"Second Reading, date May 21, 1917; First Branch Journal, page 779.

"Third Reading, date May 24, 1917; First Branch Journal, page   .

"Remarks.

"I also certify that the above-mentioned ordinance was passed by a majority of all the members elected to each Branch, and that on its final passage, the vote was taken by yeas and nays, the names of members voting for and against same being entered in the respective journals. The said ordinance was not read the third time in either Branch until it had first been actually engrossed for its third reading.

"(Signed)   C. Chas. Friedel,

"Chief Clerk.

"The proper steps appear to have been taken in the passage of this ordinance, and there is no legal reason why it should not be approved.

"(Signed)   S. S. Field,

"City Solicitor."

The engrossed ordinance also bears the following subsequent endorsements: "Presented to his Honor the Mayor this 28th day of May 1917—C. C. Friedel, Chief Clerk, Second Branch City Council," and "Approved June 13, 1917— James H. Preston, Mayor." Mr. Friedel testified that the first two endorsements on the engrossed ordinance were taken from the original ordinance, on which they appear, and that the original ordinance is sent with the engrossed copy to the Mayor "and filed away"; that the endorsements on the engrossed ordinance by the Clerk of the Second Branch were stamped by him, but that the part of the endorsements in writing and his name to the certificate attached thereto were written by Norval H. King, Reading Clerk of the Second Branch, who was authorized to do so in accordance with the custom; that after an ordinance "leaves the Chief Clerk it is given to the Enrolling Committee, consisting of the Reading Clerks of the two branches, and they must verify all ordinances, and that 'when one comes back' it is up to the Enrolling Committee; that it was the duty of Norval H. King to have re-engrossed the ordinance with the amendments." On cross-examination he stated that he recognized the writing of Gilbert A. Dailey and the endoresments made by him; that the word "Passed" was written by Dailey; that after an ordinance comes back to the Second Branch it goes to the Enrolling Committee; that the endorsement on the engrossed bill, "Examined and found correct by Enrolling Committee," was signed by Andrew J. Preller and Norval H. King, who constituted the Enrolling Committee; that it was also signed by the Presidents of the two branches; that the endorsement "Approved June 13, 1917," was signed by the Mayor; that the certificate purporting to be signed by the City Solicitor was signed by the City Solicitor, and "that all steps in the ordinance are in accordance with the regular procedure."

Counsel for the appellees objected to the introduction of the journals and to the oral evidence offered to contradict the "ordinance, as presented to the Court," and to the introduction of the two other ordinances mentioned, and the entries

in the journals relating thereto, and the second, third and fourth exceptions are to the rulings of the Court below admitting such evidence. The fifth exception is to the order of the Court below quashing the proceedings of the Highways Engineer and the Appeal Tax Court.

Section 221 of the Charter of Baltimore City (Weeks's Edition) provides:

"Every legislative act of the Mayor and City Council of Baltimore shall be by ordinance or resolution. No ordinance or resolution shall be passed except by a vote of a majority of all the members elected to each Branch, and on its final passage the vote shall be taken by yeas and nays, the names of members voting for and against the same being entered on the journal. Every ordinance enacted by the city shall embrace but one subject, which shall be described in its title, and no ordinance shall be revived, amended. or re-enacted by mere reference to its title, but the same shall be set forth at length, as in the original ordinance. And no ordinance shall become effective until it be read on three different days of the session in each Branch, unless all the members elected to the Branch where such ordinance is pending shall so determine by yeas and nays, to be recorded on the journal, and no ordinance shall be read a third time until it shall have been actually engrossed for a third reading."

Section 23 of the Charter, which provides for the authentication of ordinances, is as follows:

"All ordinances or resolutions duly passed by the City Council, after being properly certified by the Presidents of the First and Second Branches of the City Council as having been so passed, shall be delivered by the Clerk of the Branch in which the same originated, to the Mayor for his approval, and there shall be noted on said ordinances or resolutions the date of said delivery; and, when approved by him, they shall become ordinances or resolutions of the Mayor and City Council of Baltimore," etc.

The contention of the appellants are: (1) that as the engrossed ordinance offered in evidence, and the endorsements thereon, show that the ordinance was passed by the City Council and was duly authenticated in accordance with the City Charter, the journals and other evidence produced by the appellee were not admissible for the purpose of impeaching the ordinance; and (2) that even if the evidence was admissible, it was not sufficient to overcome the presumption arising from the endorsements on the engrossed copy and the due authentication of the ordinance. The contention of the appellee, on the other hand, is that the journals and other evidence produced by it clearly and satisfactorily show that Ordinance No. 266 was never passed by the City Council.

Ordinances F. B. No. 374 and F. B. No. 375, and the entries in the journals relating thereto, were clearly inadmissible. Those ordinances were never approved by the Mayor and never became ordinances of the Mayor and City Council of Baltimore. *Baltimore City* v. *Gorter,* 93 Md. 8. The recital in the preamble of Ordinance F. B. No. 375, that certain amendments had been erroneously omitted from Ordinance No. 266 was at most only a declaration of the *then* members of the City Council that the amendments referred to had been omitted. The only remaining evidence admitted by the Court below tending to impeach the ordinance consists of the entries in the journals of the two branches relating to Ordinance 266 and the statement of Mr. Friedel that it was the duty of Norval H. King "to have re-engrossed the ordinance with the amendments," and we do not think this evidence sufficient, under the decisions in this State, to justify the Court in striking down the ordinance on the ground that it was not passed by the City Council.

In the case of *Fouke* v. *Fleming,* 13 Md. 392, where the facts were very similar to the evidence relied on in this case, it appeared from the Senate journal that a bill which originated in the House had been amended in the Senate, and the journal of the House indicated that the amendments had been assented to by the House of Delegates and were included in

the bill as passed. In disposing of the case, the Court said: "These provisions, dispensing with the affidavit, are contained in the engrossed bill, and in the law, as published; but, nevertheless, it has been contended that they are not, in reality, parts of the Act as passed by the Legislature, and should not be considered as parts of the law. In support of this view it is said that the original bill, as reported, contained the sections which dispense with the affidavit, both as to bills of sale and mortgages of personal property, as now contained in the printed copy of the Act, but that the bill was amended in the Senate by striking out the provisions in the 128th and 142nd sections, which dispense with the affidavit as to the consideration, and adopting other provisions in lieu of them, expressly requiring the affidavit, both in relation to bills of sale and mortgages of personal property; which amendments of the Senate were assented to by the House of Delegates; and that they were included in the bill, as finally passed, may be seen by reference to the Senate journal of 1856, pages 233, 234, and the House journal, of same session, pages 497, 498. Seeing that the engrossed bill and the published copy of the law correspond, we do not feel authorized to assume they are erroneous, and decide the law to be according to the evidence of the proceedings of the Legislature, as furnished by the journals of the two houses. An engrossed bill, according to the practice of legislation in this State, is examined by a committee of the house in which it originated, then the bill, as engrossed, is assented to by both houses, then attested by the chief clerk of each house and signed by the Governor, with the seal of the State annexed. All this would seem to be better evidence of what a law is than the journals of the two branches of the Legislature, each journal being kept and attested only by the chief clerk of his particular branch." *Fouke* v. *Fleming, supra,* has been repeatedly cited and quoted with approval by this Court. *Annapolis* v. *Harwood,* 32 Md. 471; *Berry* v. *Baltimore, etc., R. R. Co.,* 41 Md. 446; *Ridgely* v. *Baltimore City,* 119 Md.

585; *Jessup* v. *Mayor and C. C. of Balto.*, 121 Md. 566; *Thrift* v. *Towers*, 127 Md. 62.

The case mainly relied on by the appellee is *Berry* v. *Balto., etc., R. R. Co., supra*. But in that case JUDGE ALVEY said: "The engrossed bill as it was finally acted on by the two houses of the Legislature, with the endorsements thereon by the proper officers, as to the action of the respective Houses, together with the journals of both Houses, have been produced from the custody of their proper custodian; and from the evidence thus furnished it is made clear, beyond all question of dispute, that the particular section of the Act involved, as it passed the two houses of the Legislature, is essentially different from the corresponding section in the Act that received the imprint of the Great Seal, the signature of the Governor, and was lodged in the office of this Court for record." In disposing of the contention of counsel that, under the cases of *Fouke* v. *Fleming, supra,* and *Annapolis* v. *Harwood, supra,* the Court had no right to examine the *engrossed bill with its endorsements* and the journals, he said: "In those cases it was not made distinctly to appear that the particular provision of the statute, as published, did not receive the legislative assent; the evidence not being such as the Court was willing to accept to overcome the strong presumption arising from the due authentication of the statutes there involved. It was assumed from the fact that the bills, as published, corresponded in all respects with the bills as engrossed, that they did receive the assent of the Legislature. But in this case now before us it is plainly shown by most unquestionable evidence, that the third section of the bill, as engrossed, before the third reading and the passage thereof, pursuant to the requirements of the Constitution, * * * as it actually passed, is essentially different from the corresponding section in the bill that was attested, sealed, signed by the Governor, and filed for record." After referring to a number of cases, JUDGE ALVEY further said: "But while the authorities just cited maintain that it is the right and duty of the Court to go behind the authentication of the statute,

and to receive evidence, such as that furnished by the engrossed bills, with the endorsements thereon, and the journal of the proceedings of the two houses of the Legislature, upon the question of the constitutional enactment of what purports to be a statute, they all seem to concur in maintaining that no statute, having the proper forms of authentication, can be impeached or questioned upon mere parol evidence. Nor do we decide in this case that the journals of the two Houses, though required by the Constitution to be kept as records of their proceedings, would be evidence *per se* upon which the validity of a statute, having the required authentication, could be successfully questioned as to the manner of its enactment. But we think the journals, in connection with other competent evidence upon the subject, may be examined as means of information to aid in arriving at a correct conclusion as to what was the action of the Legislature on any particular bill before it." In the case at bar, the ordinance, as engrossed for its third reading, pursuant to the requirements of the City Charter, and the endorsements thereon by the proper officers, or by their authority, show that the ordinance in question was passed by the City Council and approved by the Mayor in the form in which it was produced in Court, and *Berry* v. *Balto., etc., R. R. Co., supra,* does not sustain the contention that the journals and the parol evidence admitted by the Court below are *sufficient* to overcome the presumption arising from the due authentication of the ordinance. In the case of *Warehouse Co.* v. *Lumber Co.,* 118 Md. 139, Judge Pattison, speaking for this Court, said: "Upon the authorities cited and from the information to be gathered from such engrossed and enrolled bills and the said journals of the House and Senate, we think they are a proper source from which the Court may acquire information as to whether the statute was constitutionally passed and is a valid and subsisting law." In the case of *Ridgely* v. *Baltimore City, supra,* Judge Burke said: "It would seem to be definitely settled in this State that an authenticated statute can not be impeached by the Legislature journals alone, or by mere parol

evidence," and he then quotes the statement of the Court in *Fouke* v. *Fleming, supra,* "Seeing that the engrossed bill and the published copy of the law correspond, we do not feel authorized to assume they are erroneous, and decide the law to be according to the evidence of the proceedings of the Legislature, as furnished by the journals of the two Houses." In the still later case of *Jessup* v. *M. & C. C. of Balto., supra,* where the Court held parol evidence to be inadmissible, JUDGE URNER,, speaking for this Court, said: "While the decisions of this Court recognize its right and duty, in passing upon a question like the present, 'to receive evidence such as that furnished by the engrossed bills, with the endorsements thereon, and the journal of proceedings of the two Houses of the Legislature' (*Berry* and *Ridgely cases, supra*), the inadmissibility of parol testimony to impeach a duly authenticated statute has been clearly determined. Even the legislative journals do not of themselves have such a probative quality and are entitled to be considered only in connection with other competent proof."

The general rules of construction which govern in the interpretation of Acts of the Legislature are applicable to the legislative acts of a municipal corporation (*State* v. *Kirkley,* 29 Md. 85), and no good reason can be assigned why the rules governing the courts in determining whether an Act has been passed in accordance with the provisions of the Constitution should not be applied in determining whether an ordinance has been passed in accordance with the provisions of the charter of a municipal corporation. Applying those rules, as stated in the cases referred to, it is clear that the evidence furnished by the journals of the two branches of the City Council is not sufficient to overcome the presumption arising from the due authentication of the ordinance in question. The statement by Mr. Friedel that it was the duty of Norval II. King "to have re-engrossed the ordinance with the amendments" was the mere expression of the opinion of the witness, and was not admissible as tending to show that the ordinance had been amended. But even if it was admissible, it

was evidently based upon the entries made in the journals, and gave no additional weight to the evidence furnished by them.

The record contains a certificate of the Judge who presided at the hearing of the motion to quash setting out, under the head of "Addendum," certain other evidence offered by the appellee, some of which appears to have been admitted. We have examined this evidence, and we think that the evidence excluded by the Court was, for the reasons we have already stated, properly rejected, and that the evidence admitted does not sustain the contention of the appellee.

It follows from what has been said that the judgment of the Court below quashing the proceedings of the Highways Engineer and the Appeal Tax Court must be reversed.

> *Judgment reversed, with costs and new trial awarded.*