## NATHAN E. BERRY vs. THE BALTIMORE AND DRUM POINT RAILROAD COMPANY.

*When Statutes having the proper Forms of Authentication, may be Impeached—Statute void in part and good in part—Presumption arising from the due Authentication and Publication of a Statute, that it was validly Enacted—When the Court may look behind the Printed Statute in determining its Validity—Parol evidence to Impeach a Statute, duly authenticated, inadmissible—The Journals of the two Houses of the Legislature as evidence of the action of the Legislature on any particular Bill.*

By the nineteenth section of the Act of 1868, ch. 364, incorporating The Baltimore and Drum Point Railroad Company, it was provided that if the company did not commence the road within six years from the passage of the Act, and should not finish the same in four years from the time of the commencement thereof, then the charter should be null and void. In the preamble to the third section of the Act of 1874, ch. 389, amendatory of the company's charter, it was stated that it was feared the time allowed by the charter for the completion of the road, was insufficient, and that an extension of time therefor was desired. Following this preamble the third section, as published in the printed volume of the laws, provided that if the road were not finished in five years from the 1st of January, 1870, its charter and all its amendments should be null and void, and declared the nineteenth section of the charter to be repealed. Under its original charter, the company having commenced its road in 1873, had until the year 1877, to complete it, but under the third section of the amendatory Act as published, it had only until the 1st of January, 1875; so that instead of obtaining an extension of time, as was designed, the company had in fact been restricted in the time allowed by the original charter. From an examination of the engrossed bill as it was finally acted on by the two Houses of the Legislature, with the endorsements thereon by the proper officers, as to the action of the respective Houses, and the journals of both Houses, it appeared beyond

question that the extension of time for the completion of the road as provided in the third section, was for five years from the 1st of January, 1875. HELD:

1st. That as the third section of the Act of 1874, ch. 389, as that Act was sealed, and approved by the Governor, was materally different from the third section of the Act as it passed the two Houses of the Legislature, said section was null and void.

2nd. That as the other portions of the Act of 1874, ch. 389, exclusive of the third section, were regularly passed by the Legislature and approved by the Governor, and were entirely distinct and severable from said third section, they were valid and effective.

Where an Act has been duly authenticated and published as law by authority, the presumption is, that all the Constitutional solemnities and pre-requisites necessary to its valid enactment, have been complied with; and this presumption exists until the contrary is clearly made to appear. But when it can be made clearly to appear, that the particular bill, or section of a bill, although it may have all the forms of authentication, has never in fact received the legislative assent, the Court is bound to look not only behind the printed statute book, but beyond the forms of authentication of the bill as recorded in the office of the Court of Appeals, and if the evidence be clear and entirely satisfactory to the mind of the Court, to decide accordingly.

A statute having the proper forms of authentication cannot be impeached or questioned upon mere parol evidence.

The journals of the two Houses of the Legislature, in connection with other competent evidence upon the subject, may be examined as means of information to aid in arriving at a correct conclusion as to what was the action of the Legislature on any particular bill before it.

APPEAL from the Circuit Court for Anne Arundel County, in Equity.

The bill of complaint in this case filed by the appellant on the 12th of December, 1874, charged that the appellee was incorporated by the Act of 1868, ch. 364, and authorized to construct a railroad from some point in or near Baltimore, through the counties of Anne Arundel and Calvert, to a point at or near the mouth of the Patuxent river; that the company was duly organized under its

charter, and invited and obtained subscriptions to its capital stock—that among others the complainant subscribed to the capital stock of the road, and after a time the road was located and the work of construction was begun; that after such construction had been commenced, various difficulties and embarrassments were encountered in the construction of the same, and so many delays occurred that grave apprehensions were entertained, that the company would be unable to construct its road, and that all the outlay thereon, and the subscriptions already paid, would be utterly lost; that the complainant believing that the money he had already paid on his subscription would be irrevocably lost, and that the residue subscribed by him, if paid, would be a further loss, he postponed and delayed its payment under the calls of the company; that the Legislature passed the Act of 1874, ch. 389, amending the charter of the company; that the third section of this Act provided "that if the said road shall not be finished in five years from the 1st of January, 1870, then the said Act, and this and all other amendments thereto shall be null and void, and that the nineteenth section of the said Act, be and the same is hereby repealed;" that said Act was formally accepted and acted on by the company; but that notwithstanding such acceptance the company had taken no measures, nor done any work looking to the completion of the road by the time limited; that by reason of such delay and neglect the charter of the company and all amendments thereto would become null and void, and the money already obtained for subscriptions to the capital stock would be utterly lost.

The bill further charged that such being the condition of affairs, the company nevertheless demanded payment from the complainant of the residue of his subscription to wit: $95; which he refused for the reason, among others, that inasmuch as the whole object and consideration of such subscriptions, to wit, the construction and equipment

of the road was defeated by the inevitable forfeiture of its charter under the provision aforesaid, that his obligation to pay the same had ceased; that nevertheless the company disregarding such considerations, had caused a warrant to be issued against him to compel the payment of the said sum of $95, had obtained a judgment therefor, and had caused a *fieri facias* to be issued on said judgment, and to be levied on a horse of his, and that the same would be sold unless restrained by the Court. The bill, therefore, prayed that an injunction might issue against the company enjoining it from proceeding further in the collection, and enforcement of the payment of said judgment and execution, and in the construction of said road; and that said judgment might be decreed to be null and void.

The appellee answered, and after admitting sundry of the allegations in the bill, averred among other things, that by the nineteenth section of the charter, the company was allowed until the 19th of March, 1878, for the completion of its road, and that such was the rights of the company before the January session of 1874, when the Act of 1874, ch. 389, was passed; that at that session the company applied to the General Assembly for an extension of the time so allowed to it by the said Act of 1868, fearing that such time might prove insufficient for the purposes, and the General Assembly acceded to the application, and passed a law in which the following preamble and section were contained, namely:

"And whereas, the said company has been duly organized under its said charter, and the work of construction of the said road has been commenced, but it is feared that from unavoidable delays, either in obtaining the right of way for the said railroad, or from other causes, the said company may be prevented from completing the said road in its full extent within the time limited by the said charter, and further time is desired for the completion thereof; therefore,

"Sec. 3. Be it enacted, that if the said road shall not be finished in five years from the first day of January, eighteen hundred and seventy-five, then the said Act, and this and all other amendments thereto, shall be null and void, and that the nineteenth section of the said Act be, and the same are hereby repealed." All which would appear by reference to the original of said law, remaining among the records of the Legislature, duly engrossed, and bearing the several endorsements of the clerks of the Senate and House of Delegates, verifying the passage thereof.

And the respondents further averred, that after the said bill had passed the two Houses of the General Assembly, in form as aforesaid, in accordance with the application of the company, and the assent of the General Assembly, a clerk or servant of the Senate of Maryland, or some person professing to act as such, but unknown to your respondent, illegally and to the scandal of good government, and in violation of the duty he had undertaken, proceeded to make a copy of the said Act, after it had passed, in form as aforesaid, and had been engrossed as aforesaid ; and the said clerk or servant, through carelessness or design, omitted the word "five" after the word "seventy," in the said third section, thus changing the Act as the same had been voted on and passed by both branches of the General Assembly, without any right or authority to make such change, and thus to render null the action of the General Assembly; and they were advised, that the pretended copy thus incorrectly made, to the scandal of good government and order, was afterwards sent by some person to the printer, who had the contract to print the laws of the session of 1874, and the said incorrect copy was printed in the printed volume of the laws, as charged in the said bill. The respondents, therefore charged, that the said pretended copy, thus unlawfully printed, was not the law which passed the General Assembly, but was a pretended copy, which never was voted for

by any member of the General Assembly, or by either House thereof, but was manufactured unlawfully by unknown persons, or by the clerk or servant, who, by carelessness or design, thus changed and tampered with the law as passed by the General Assembly. And they were advised, that any limitation of the time for the completion of the said railroad, in the printed volume set forth, which is different from the time really expressed in the bill which passed the General Assembly, in form as aforesaid, is void and of no effect, because no such limitation as expressed in the printed volume ever passed the General Assembly.

And further, that even if this Court should consent to notice the said pretended Act, as printed as aforesaid, which never passed the General Assembly, and to disregard the Act which, really passed the General Assembly, yet that the said pretended printed Act, inserted in the said volume of laws as chapter 389, *as to the said third section*, is null and void, because of its obscurity, absurdity, repugnance and injustice. The object of the Legislature, in legislating on the subject, being to extend the time for the completion of the road beyond the 30th day of March, 1878, as announced in the preamble to the said section, whereas the said section itself professes to decrease and shorten the time for its completion, and affix a limit therefor which was totally insufficient for the purpose, and thereby certainly cause the forfeiture and confiscation of the large sums of money already invested in the road by the State of Maryland and individuals, in the face of the formal declaration of the Legislature in the said preamble, that further time was necessary for the purpose beyond the time then actually allowed, to wit, the 30th day of March, 1878.

And the respondents averred that they never knew that the said mentioned change had been made in the Act of Assembly, which passed the General Assembly as aforesaid, until after the said volume of laws had been printed

in June last; and that immediately upon becoming acquainted with the facts, they refused to accept the said third section of the printed law as part of their charter, or to be bound by the same, and they have always refused to accept the said third section, or to recognize or agree to the same in any manner; and were advised that the same was inoperative and of no force or effect, to impair or change their rights under their charter, in the absence of their acceptance thereof, and in the face of their refusal to be bound thereby.

And the respondents therefore charged, that according to their charter, as the same then existed, they were allowed until the 30th of March, 1878, for the completion of their road, and that within that time they were entitled to sue for and collect all subscriptions theretofore made to its capital stock, and to apply the same towards the building and completion thereof, as fully as if the said Act of 1874, ch. 389, had never passed.

The respondents further admitted that it was absolutely impossible for them to complete their road by the first day of January, 1875, as was charged in the bill, and that they had made no effort to complete the same by that day, since the session of 1874, and knew such effort would be unsuccessful.

The respondents also averred that they intended to proceed with the work on their road with all convenient speed, and they expected to complete the same by the time allowed them for its completion by the existing provisions of their charter, and that they could not succeed in such lawful designs unless they were allowed to collect and enforce payment of the subscriptions made by the stockholders to the capital stock of the said railroad. And they therefore insisted that it was not competent for the General Assembly to pass a law to shorten the time granted by the charter for the completion of the said railroad; and that any such law would be contrary to the pro-

visions of the Constitution of the United States, and therefore void.

The answer prayed the Court to refuse the injunction and to dismiss the bill. By agreement of counsel the Court, (MILLER, J.,) passed an order *pro forma* refusing the injunction.

From this order the complainant appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, MILLER and ALVEY, J.

*Frank H. Stockett,* for the appellant.

The Legislature had the right and power to repeal the charter, or to impose such conditions and restrictions on its exercise as would annul it on the failure by the company to comply with such conditions. *Const., Art.* 3, *sec.* 48; *Charter,* 20 sec., (1868, *ch.* 364); 2 *Kent. Com.,* 306, 307; 16 *Maine,* 224; *Angell & Ames on Corporations, ch.* 22, *p.* 746; 2 *Redfield,* 418, *and the cases there cited*; *McLaren vs. Pennington and others,* 1 *Paige,* 102; *Crease vs. Babcock,* 23 *Pick.,* 334; *Miners' Bank vs. U. States,* 1 *Greene, (Iowa)* 553; *Erie & N. East. R. R. Co. vs. Casey,* 26 *Penn.,* 287, 298, 341.

The third section of 1874, ch. 389, repeals absolutely the charter in the event that the road be not finished by the 1st of January, 1875, and the appellee admits that it is not possible to finish the road by that date, and that the company is making no effort to do so. The company must then cease to exist, and become dissolved *ipso facto.* This is different from the forfeiture of a charter, which must be ascertained and declared by a judgment of a Court of Law. *Angell & Ames on Cor., ch.* 22, *p.* 754; *McLaren vs. Pennington,* 1 *Paige,* 109; *The President, &c. of Port Gibson vs. Moore,* 13 *Smedes & Marshall,* 157; *Canal Company vs. Railroad Co.,* 4 *G. & J.,* 122; *Crease vs. Babcock,* 23 *Pick.,* 334; *Miners' Bank vs. U. States,*

1 *Greene*, 553 ; *Erie & N. East R. R. Co. vs. Casey*, 26 *Penna.*, 287–301–309–310.

The Act of 1874, ch. 389, was validly passed according to the requirements of the Constitution of this State, duly enrolled in the office of the Court of Appeals, and published. It is, therefore, valid, according to the requirements of the Constitution. (Art. 3, sec. 30 of Const.) It is not competent for the Court to go behind the evidence so furnished. *Fouke vs. Fleming & Douglass*, 13 *Md.*, 392 ; *Mayor, &c. of Annapolis vs. Harwood and Wife*, 32 *Md.*, 478.

It is insisted by the appellee that the law as recorded in the office of the Clerk of the Court of Appeals and published, does not correspond with the law as actually passed, which extended the time for the completion of the work to five years from first of January, 1875. In the cases of 13 *Md.*, 392, 32 *Md.*, 478, this Court has expressly determined that it is not competent by extrinsic evidence, to show that the provisions of an Act of Assembly are different from those set out in the published volume of laws ; the printed Act, as in this case, being an exact transcript of the copy, recorded in the office of the Court of Appeals, in conformity with the requirements of the Constitution.

Nor is the Act of 1874, ch. 389, or the third section thereof, void, by reason of repugnancy between the preamble to such section, and the provisions of the section itself. *Potter's Dwarris on Statutes*, 265, 270 ; *Smith's Statutory and Consti. Con.*, ch. 12, *pages* 700, 701, 709 ; *Sedgwick on Stat. and Const. Law*, 54, 55 ; *Clark vs. Mayor, &c. of Balto.*, 29 *Md.*, 283 ; *Fisher vs. Blight*, 2 *Cranch*, 358–399 ; *Jones vs. Smart*, 1 *Term. Rep.*, 52; *Alexander vs. Worthington*, 5 *Md.*, 485 ; *Maxwell, et al. vs. State*, 40 *Md.*, 273.

*Daniel Clarke* and *Alex. B. Hagner*, for the appellee.

The first question raised upon the pleadings is,—did any law pass the Legislature in 1874, limiting to the 1st of

January, 1875, the charter of the railroad?  In point of fact, it is absolutely true, that no bill ever passed the General Assembly of Maryland, requiring the Baltimore and Drum Point Railroad to be finished in five years from the 1st of January, 1870.

It is equally certain, that the General Assembly did pass a law extending the charter of the company until the 1st of January, 1880, to enable them to complete their road.

The law which really passed the Legislature, is here in Court for the inspection of the Judges, bearing upon it every endorsement required to be made under the rules of the two bodies by their respective Clerks, and "*actually engrossed* for a third reading,*" as required by sec. 27, of Art. 3 ; the only section in the Constitution referring in any way to the subject of *engrossing a bill.*

The journals of the two bodies which they are required to keep and publish, (*Const. Art.* 3, *sec.* 22,) verify the assertion in every particular, and show that a law *extending the charter of the road until* 1880, was engrossed by the order of the Senate, where it originated, and passed both Houses by unanimous consent, as evidenced by the yeas and nays recorded therein.  *Senate Journal of* 1874, *pp.* 227, 705–6, 780, 897 ; *House Journal, pp.* 1164, 1208, 1269.

Knowing then the *fact* beyond all controversy, are the Courts compelled, by some inexorable rule of law, to close their eyes upon the real substance, and respect only something which is conceded to be a distorted and untrue image of the thing they are required to examine?  The Court should examine the journals and the engrossed bill, and should sustain the law which these sources of evidence show did really pass the Legislature, and should refuse to recognize a false copy, which never received a solitary vote, and which would have been unanimously rejected, if it had been presented to the Legislature.  The text writers are uniform in sustaining the rights of the Courts to adopt

this course. *Cushing on Legislative Assemblies, secs.* 2450–6; *Cooley on Const. Limitations,* 135; *Sedgwick on Statutory Law,* 67–8–9; *Smith's Com., secs.* 833–4–5–6–7.

The Journals are made evidence by the Code. *Art.* 37, *sec.* 49; *Art.* 76, *sec.* 2. For what purpose, unless to be respected when examined? 1 *Greenl. Ev. sec.* 483; 2 *Taylor Ev., sec.* 1474. The decisions in other States sustain this view. *Spangler vs. Jacoby,* 14 *Illinois,* 297; *Turley vs. The County of Logan,* 17 *Illinois,* 151; *Prescott vs. Board of Trustees of the Illinois and Michigan Canal,* 19 *Illinois,* 326; *People vs. Hatch,* 33 *Illinois,* 13; *People vs. Starne,* 35 *Illinois,* 121, 141; 35 *New Hamp.,* 579; *Soldiers' Voting Bill,* 45 *New Hamp.,* 607; 52 *New Hamp.,* 622; *Fowler vs. Peirce,* 2 *California,* 168; *Supervisors of Ramsey County vs. Heenan,* 2 *Minnesota,* 335; *State vs. Platt,* 2 *So. Ca.,* 151; *Jones vs. Hutchinson,* 43 *Alabama,* 721; *Gardner vs. The Collector,* 6 *Wallace,* 499, 511; *Purdy vs. The People,* 4 *Hill,* 384.

The case of *Mayor, &c., of Annapolis vs. Harwood,* arose before the Constitution of 1867, which was the first Constitution defining what *engrossing a bill* should mean, and requiring that this should be done *before it should be read a third time.* (*Art.* 3, *sec.* 27.) This is in opposition to the practice laid down in Jefferson's Manual. In *Dowling vs. Smith,* 9 *Md.,* 279, Judge MASON bases his opinion, that the bond was given in time, by measuring from the date of the *engrossment,* instead of the *previous passage* of the law.

So in *Fouke vs. Fleming & Douglass,* 13 *Md.,* 412, the Court recognizes the practice of engrossing the bill after it has passed, and in 32 *Md.,* 479, this Court declares that there is an engrossment after the passage of a bill for examination, &c. &c. All this might well be under the Constitutions of 1857 and 1864. But the Constitution of 1867, Art. 3, sec. 27, has changed the duty of the Legislature upon the point and thus denies all authority to

attempt an engrossment *after the passage of the law.* The " engrossed bill " now, is the bill engrossed according to sec. 27, " for a third reading." And as the engrossed bill in this case *does not* " correspond with the published copy of the law," but differs from it, the Court will feel at liberty " to decide the law to be according to the proceedings of the Legislature as furnished by the Journals of the two Houses." 13 *Md.*, 413 ; 32 *Md.*, 478. In both these cases it is admitted that the journals may be examined, but they are held to be inferior evidence in a case where the engrossed bill and the published law *correspond,* not where they *differ,* as they do in the case at bar.

If the bill was not engrossed until after it had been read a third time and passed, then *it cannot be a valid law.* No so-called engrossment *after its passage,* can supply the place of the engrossment positively required by the Constitution *before it is read the third time.*

The engrossed bill therefore which this Court has said it will compare with the published bill, is the bill engrossed in the manner required inexorably by the Constitution, and not the copy made after the passage of the law by some hanger on of the Legislature—made originally merely for the use of the printer to prevent the original Act from being exposed to loss at the printing-office.

But conceding that this Court are compelled to put in force the law as published in the statute book, the third section of the Act, is void for uncertainty, injustice and repugnancy. The charter of 1868, ch. 365, sec. 19, declares that if the road shall not be commenced within six years from the passage of the Act, and finished in four years from the time of its commencement, the Act shall be null and void. The work was commenced within the six years, and section 19, in fact gave it an existence until March, 1877.

The preamble to sec. 3, of the Act of 1874, recites that " it is feared that from unavoidable delays, either in

obtaining the right of way for the said railroad, or from other causes, the said company may be prevented from completing the said road in its full extent *within the time limited by the said charter, and further time is desired for the completion thereof;* therefore." The section then proceeds to *shorten* the time limited by at least two years. The Court is required to ascertain the *legislative intention,* in construing a law. How can they arrive at an intelligent conclusion on that point from reading this section with the preamble? 1 *Kent's Com.*, (448,) *and seq*; *Campbell's Case,* 2 *Bland,* 231; *U. S. vs. Cantrill,* 4 *Cranch.*, 167; *Potter's Dwarris.*, 265; *Ex Parte Ellis,* 11 *Cal.*, 222; *Ryegate vs. Wardsboro,* 30 *Vermt.*, 745; *Tyson vs. Postlethwaite,* 13 *Ill.*, 727; *Noble vs. State,* 1 *Greene, (Iowa,)* 325; *State vs. Mayor, &c., of Paterson,* 35 *N. J. Law Reports,* 197; *Maxwell vs. State,* 40 *Md.*, 273.

Even if the third section were valid, still there can be no forfeiture of the charter, except by due process of law, where the default of the corporation has been judicially ascertained and declared. *Angell & Ames on Corp.*, 744, 777; *People vs. Oakland County Bank,* 1 *Douglass, Mich. Rep.*, 282; *Canal Co. vs. R. R. Co.*, 4 *G. & J.*, 122; *Del. R. R. Co. vs. Tharp,* 5 *Harrington,* 454.

ALVEY, J., delivered the opinion of the Court.

This is an appeal from a *pro forma* order of the Court below, refusing an injunction to the appellant, to restrain the execution of a judgment recovered against him by the appellee, for balance of subscription to the stock of that corporation; and the ground of the application is, that, under the Act of 1874, chapter 389, section 3, amendatory of the company's charter, which was granted by the Act of 1868, chapter 364, the duration of the charter is limited to the first of January, 1875, the company not having finished or completed its road as provided it should have done.

By the 19th section of the original charter of 1868, it was provided that if the company did not commence the road within six years from the passage of the Act, and should not finish the same in four years from the time of the commencement thereof, then the charter should be null and void. By agreement filed in the cause it is admitted that the road was commenced in 1873; and by the preamble to the third section of the amendatory Act of 1874, chapter 389, it is stated that the company had been duly organized, and the work of construction of the road commenced, but that it was feared the time allowed by its charter for the completion of the road was insufficient, and that an extension of time therefor was desired; and following this preamble is the third section of the Act of 1874, which, as published in the printed volume of the laws, provides that if the road shall not be finished in five years from the first of January, 1870, then the charter, and all its amendments, to be null and void. Under the charter, before it was amended by the Act of 1874, the company had until the year 1877 to complete the road, but under the third section of the amendatory Act, as published, it has only until the first of January, 1875; so that instead of obtaining an extension of time, as was designed, the company has in fact been restricted in the time allowed by the original charter.

The appellee, in its answer to the appellant's bill, avers and insists that the third section of the amendatory Act of 1874, as it appears in the printed volume of the statutes of the last session, never in fact passed either House of the Legislature. That the third section of the Act, as it in truth and reality did pass the two Houses of the General Assembly, provided for an extension of time for the completion of the road for five years from the first of January eighteen hundred and seventy-five; and that the change was made in the section after the final passage of the Act, either by design or mistake, by some clerk or copyist, in

omitting the word "five" after the word "seventy." And in verification of the fact that such was the time for which the extension was given by the section of the Act as actually passed, the engrossed bill, as it was finally acted on by the two Houses of the Legislature, with the endorsements thereon by the proper officers, as to the action of the respective Houses, together with the journals of both Houses, have been produced from the custody of their proper custodian; and from the evidence thus furnished, it is made clear beyond all question or dispute, that the particular section of the Act involved, as it passed the two Houses of the Legislature, is essentially different from the corresponding section in the Act that received the imprint of the Great Seal, the signature of the Governor, and was lodged in the office of this Court for record, and afterwards published. As the bill passed the Legislature, the extension of time for the completion of the road, as provided in the third section, was for five years from the first of January, 1875; as it now reads in the printed statute book, the extension is for five years from the first of January, 1870. How this change or alteration occurred can only be matter of conjecture. But we may readily suppose that if the engrossed bill, as it was finally acted on by the two Houses of the Legislature, had been sealed and submitted to the Governor for his signature, instead of being entrusted to some careless or inexpert clerk to be copied for such authentication and approval, the alteration or omission would hardly have occurred.

This change or alteration in the Act is of serious import to the Railroad Company; and the question now is, how is the matter to be dealt with by the Courts? It is contended by the appellant that the law must be taken to be as we find it evidenced by the bill filed in the office of this Court, under the Great Seal, and the signature of the Governor; while, on the other hand, it is insisted by the appellee that it is competent to this Court to examine the

journals of the two Houses of the General Assembly, and the original engrossed bill, with the indorsements thereon, in order to ascertain and determine what were the provisions of the Act that really passed the two Houses of the General Assembly.

In opposition to the right to examine the journals, and the engrossed bill with its endorsements, to ascertain what the particular Act was that received the assent of the Legislature, the appellant relies upon the cases of *Fouke vs. Fleming & Douglass*, 13 *Md.*, 392, and *The Mayor, &c. of Annapolis vs. Harwood*, 32 *Md.*, 471. But those cases were not in all respects similar to the one now under consideration. In those cases it was not made distinctly to appear that the particular provision of the statutes as published, did not receive the legislative assent; the evidence not being such as the Court was willing to accept to overcome the strong presumption arising from the due authentication of the statutes there involved. It was assumed, from the fact that the bills, as published, corresponded in all respects with the bills as engrossed, that they did receive the assent of the Legislature. But in the case now before us, it is plainly shown by the most unquestionable evidence, that the third section of the bill as engrossed, before the third reading and the passage thereof, pursuant to the requirement of the Constitution, Art. 3, sec. 27, *and as it actually passed*, is essentially different from the corresponding section in the bill that was attested, sealed, signed by the Governor, and filed for record. There is therefore no ground for presumption in favor of the identity of the bill as recorded in the office of this Court, with that which passed the Legislature, unless we make the facts of the attestation, the imprint of the Great Seal, the signature of the Governor, and the filing for record, conclusive upon the question as to what is law, and exclude all other evidence upon the subject, no matter how plain and direct it may be.

But to do this would be virtually denying to the people of the State the benefit of the safe-guards provided by the Constitution, and to allow and enforce that as law which has not been assented to by their representatives. The Constitution has prescribed certain modes and pre-requisites for the enactment of laws, and as these, by the terms of the Constitution, are imperative conditions, no bill, not so enacted into law, should be allowed to affect the rights of the citizen. Suppose, for instance, it could be plainly shown by competent evidence for the purpose, that a particular bill, alleged to have been passed by the Legislature, had never been put to final vote, or that it had been declared passed without previous readings, and in total disregard of the expressed mandatory requirements of the Constitution, as to the manner in which a bill can be enacted into a law, could it be successfully maintained that such alleged Act should be enforced as law, notwithstanding the omission or non-observance of the essential conditions and prerequisites upon which a law can be enacted under the Constitution? We suppose not. And if not in such case, *a fortiori* should it not be enforced as law when it is plainly made to appear that it has never been before the Legislature at all.

Unquestionably, where an Act has been duly authenticated and published as law by authority, the presumption is, that all the constitutional solemnities and prerequisites necessary to its valid enactment have been complied with; and this presumption exists until the contrary is clearly made to appear. But when it can be made clearly to appear, as in this case it has been, that the particular bill or section of a bill, although it may have all the forms of authentication, has never in fact received the legislative assent, we think the Court is bound to look not only behind the printed statute book, but beyond the forms of authentication of the bill as recorded in the office of this Court, and if the evidence be clear and entirely

satisfactory to the mind of the Court, to decide accordingly.

This question has repeatedly arisen in several of the State Courts of the highest authority, and in all cases, with but few exceptions, it has been held, that neither the printed statute book, nor the ordinary authentication of the statute after its passage, would preclude the inquiry into the fact, whether the statute as published had in truth passed the Legislature ; and as evidence upon the question, the legislative journals, and the bills as acted upon by the legislative assemblies, have been consulted. *Purdy vs. The People*, 2 *Hill*, (*N. Y.*,) 33 ; *S. C.*, 4 *Hill*, 384 ; *De Bow vs. The People*, 1 *Denio*, 11 ; *Southwark Bank vs. Commonwealth*, 2 *Penn. St.*, 446 ; *Spangler vs. Jacoby*, 14 *Ill.*, 297 ; *Turley vs. Logan County*, 17 *Ill.*, 151 ; *People vs. Stone*, 35 *Ill.*, 121, 141 ; *People vs. Mahany*, 13 *Mich.*, 481 ; 35 *N. H.*, 579 ; 52 *N. H.*, 622 ; *Cooley on Const. Lim.*, 135 ; *Smith on Const. & Stat. Law*, secs. 949, 50 ; *Sedgw. on Const. & Stat. Law*, 69 ; *Cushing on the Law of Legislative Assemblies*, secs. 2211–12–19–22 and 2405.

But while the authorities just cited maintain that it is the right and duty of the Court to go behind the authentication of the statute, and to receive evidence, such as that furnished by the engrossed bills, with the indorsements thereon, and the journal of proceedings of the two Houses of the Legislature, upon the question of the Constitutional enactment of what purports to be a statute, they all seem to concur in maintaining that no statute, having the proper forms of authentication, can be impeached or questioned upon mere parol evidence.   Nor do we decide in this case, that the journals of the two Houses, though required by the Constitution to be kept as records of their proceedings, would be evidence *per se* upon which the validity of a statute, having the required authentication, could be successfully questioned as to the manner of its enactment. But we think the journals, in connection with other com-

petent evidence upon the subject, may be examined as means of information to aid in arriving at a correct conclusion as to what was the action of the Legislature on any particular bill before it. And while the evidence must be of the most satisfactory character, in order to overcome the presumption arising from due authentication of the statute, we think we may safely conclude with the Supreme Court of the United States, in the case of *Gardner vs. The Collector,* 6 *Wall.,* 499, that, on principle as well as authority, whenever a question arises in a Court of Law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the Judges who are called upon to decide it, have a right to resort to any source of information which in its nature is reliable and capable of conveying to the judicial mind a clear and satisfactory answer to such question; always seeking first for that which in its nature is most appropriate, unless the positive law has enacted a different rule. And applying this rule to the present case, as we can have no doubt whatever that the third section of the Act in question, as that Act was sealed and approved by the Governor, is materially different from the third section of the Act as it passed the two Houses of the Legislature, we must, therefore, declare that particular section of the Act to be null and void.

And having thus declared the third section of the Act a nullity, the next question is, how does that affect the remainder of the statute? Upon examination it is found that the third section is entirely separate and disconnected from the other sections of the Act, and that the operation and effect of those sections in no manner depend upon the co-existence of the third section. As applicable to such case, Judge COOLEY, in his work on Constitutional Limitations, p. 177, says: "It will sometimes be found that an Act of the Legislature is opposed in some of its provisions to the Constitution, while others, standing by themselves, would be unobjectionable. So the forms observed in pass-

ing it may be sufficient for some of the purposes sought to be accomplished by it, but insufficient for others. In any such case the portion which conflicts with the Constitution, or in regard to which the necessary conditions have not been observed, must be treated as a nullity. Whether the other parts of the statute must also be adjudged void because of the association, must depend upon a consideration of the object of the law, and in what manner, and to what extent the unconstitutional portion affects the remainder." Here, as the entire published statute, except the third section, was regularly passed by the Legislature, and approved by the Governor, there can be no reason for declaring the other portions of it void, because the third section is found to be a nullity. Statutes may be void in part and good in part; and if the part that is valid is entirely distinct and severable from that which is void, the Courts will uphold and enforce the former as if passed disconnected from the latter. *State vs. Commissioners of Balto. Co.*, 29 *Md.*, 521; *Mayor, &c. of Hagerstown vs. Dechert*, 32 *Md.*, 369. That principle applies to this case.

It follows from what we have said, that the 19th section of the appellee's charter is left unaffected by the Act of 1874, and that that section still prescribes the limitation for the commencement and completion of the road. And, as in this view of the case the appellant's bill presents no ground for an injunction, the order appealed from will be affirmed, and the bill dismissed.

*Order affirmed, and*
*bill dismissed.*

(Decided 27th February, 1875.)