# COURT OF APPEALS.

## The People agt. John Petrea.

*Constitutional law — Construction of the amendments to the constitution adopted in 1874 with reference to local legislation — Chapter 532, Laws of 1881, amending section 1041 of the Code of Civil Procedure, in so far as it provided for the selection of grand jurors in and for the city and county of Albany, is unconstitutional — But that part of the act which relates to the selection of petit jurors is constitutional — Practice as to drawing grand and petit jurors — Code of Criminal Procedure, sections 328, 239, 312, 313, 321, 332, 293, 362, 285.*

Section 18 of article 3 of the Constitution (as amended in 1874) provides that the legislature shall not pass a private or local bill in certain enumerated cases. Section 25 of same article declares that said section 18 shall not apply to any bill, or the amendments to any bill, which shall be reported to the legislature by commissioners who have been appointed pursuant to law to revise the statutes:

*Held,* that the legislature cannot pass a local bill in any one of the enumerated cases unless reported to it by the commissioners to revise the statutes.

Whenever a question arises as to the constitutionality of a statute the courts may resort to any source of information which in its nature is original evidence of any fact relevant to the inquiry, but the motives of the legislature in passing a particular statute is irrelevant.

The journals of each branch of the legislature and the original act are competent evidence upon the issue whether a particular law has been constitutionally passed.

An amendment of an existing local law regulating the selection of petit jurors which simply transferred the power of selection from one local officer, or set of officers, to another local officer is constitutional.

In this case the defendant was indicted for a felony by a grand jury which was drawn from names selected under an unconstitutional law, and objection on that ground was taken by him before plea of not guilty:

*Held,* that such grand jury was a *de facto* one, and the invalidity of the law affected none of his substantial rights, and therefore there was no violation of the constitutional guaranty (*art.* 7, *sec.* 10) that no person shall be held to answer for a capital or otherwise infamous crime unless on presentment or indictment of a grand jury.

If a defect in the organization of a grand jury is such as to deprive it of its character as a grand jury in a constitutional sense, the court is bound to take notice of the defect, although no statute authorized it, or even

if a statute assumed to preclude the raising of the objection. But when the defect is not of that character the question is one of procedure merely, subject to regulation by the legislature.

The Code of Criminal Procedure provides no way whereby a defendant can make the objection to a grand jury, that it was drawn from names selected pursuant to the provisions of an unconstitutional law.

The Code of Criminal Procedure controls as to every indictment found after it went into effect, whether the crime charged was committed before or after that time (*Affirming S. C.*, 64 *How.*, 139).

APPEAL from judgment of general term of the supreme court, third department, affirming a conviction in the court of sessions of Albany county. The case at general term is fully reported (64 *How. Pr. R.*, 139).

The facts are sufficiently stated in the opinion.

*Nathan P. Hinman* and *Edward J. Meegan*, for defend ant, appellant.

*D. Cady Herrick*, district-attorney, for people, respondents.

ANDREWS, *J.* — The defendant was indicted at the September term of the Albany county sessions, 1881, for the crime of grand larceny committed on the 2d day of August, 1881. He was arraigned at the March term, 1882, and on his arraignment filed a special plea setting forth in substance that the grand jury which found the indictment was not a legal grand jury for the reason that it was not drawn from any list of grand jurors selected by the supervisors of Albany county, but from a list of petit jurors pursuant to chapter 532 of the Laws of 1881, which act is alleged in the plea to be unconstitutional, in that it is a local act for selecting and drawing grand jurors in the city and county of Albany, and was not reported to the legislature by commissioners appointed to revise the statutes, and was passed in contravention of article 3, section 13 of the Constitution adopted in 1874, which forbids the passing by the legislature of a private or local bill in certain enumerated cases, and among others for "selecting, drawing summoning or impanneling grand or petit jurors."

The People agt. Petrea.

The defendant accompanied his plea with an offer to prove the facts stated in the plea, and especially to prove by the clerk of the senate, by the commissioners appointed to revise the statutes, by the journal of the legislature of 1881, and by the original act itself that the act was not reported to the legislature by any commissioner or commissioners appointed to revise the statutes.

The court overruled the plea and offer of proof, and the defendant's counsel thereupon moved the court to set aside the indictment upon the grounds set forth in the special plea, and offered to prove the facts as before, which motion was denied, and this was followed by a motion to quash the indictment upon the same grounds and upon the offer of the same proof, which motion was also denied. The defendant thereupon interposed the plea of not guilty, and a jury was ordered to be impanneled to try the issue. The defendants counsel thereupon objected to the panel of petit jurors, on the ground of the unconstitutionality of the act of 1881, under which the list of petit jurors was selected, and offered to substantiate the facts hereinbefore stated by proof. The court overruled the objection, and a jury was impanneled and the trial proceeded and resulted in the conviction of the defendant of the crime charged in the indictment. It will contribute to a clear understanding of the question raised in respect to the constitutionality of the act of 1881, to have in view the laws in force at the time of the passage of that act, regulating the selection of grand and petit jurors in the county of Albany. Prior to the act of 1881 grand jurors in the county of Albany were selected under the general provisions of the Revised Statutes. The list was prepared by the supervisors of the county (2 *Rev. Stat.*, 720, *sec.* 31 *et seq.*), and was returned by them to the county clerk, who placed the names in a box, from which from time to time, prior to the terms of the courts, the names of twenty-four persons were drawn to serve as grand jurors. The petit jury list was also made up in accordance' with the system prescribed by the general statutes for the

selection of petit jurors in the counties of the state, with a single exception, viz: the selection of persons in the city of Albany to serve as petit jurors, instead of being made by the supervisors, assessors and town clerk, as provided in case of towns, was made by the supervisor and assessor of the respective wards, each ward being for that purpose considered as a town. This method of selecting petit jurors in the city of Albany was first prescribed by the Revised Statutes (2 *Rev. St.*, 413, *sec.* 23), and the provisions of the Revised Statutes upon that subject as to the city of Albany were incorporated into the Code of Civil Procedure, passed in 1876, in the article relating to the mode of selecting, &c., trial jurors, as section 1104.

The next legislation on the subject of grand and petit jurors in Albany county, was chapter 532, Laws of 1881, which is the act now in question. That act was purported to amend section 1041 of the Code of Civil Procedure by inserting therein the following provisions: " In the city of Albany the recorder of the said city shall perform the duties imposed by this title upon the supervisor, town clerk and assessors of towns. In Albany county grand jurors shall hereafter be drawn from the box containing the names of petit jurors selected for said county, in the same manner as petit jurors, and hereafter no separate list of grand jurors shall be prepared for said county." This act, if valid, effected an entire change in the system of selecting grand jurors in Albany county. It abrogated the provisions of the Revised Statutes, imposing upon the supervisors of the county the duty of preparing a list of grand jurors, and made the petit jury list *pro hac vice* the grand jury list also. Thereafter there was to be neither a separate grand jury list nor a separate box containing the names of persons selected as grand jurors. The change in respect to the selection of petit jurors made by the act of 1881 was much less radical and consisted simply in the substitution of the recorder of the city of Albany, in place of the supervisors and assessors of the wards, to dis-

charge the duty of preparing the jury lists in that city. The act of 1881, so far as it relates to the selection and drawing of grand jurors for the city and county of Albany, is a local act upon that subject and is within the prohibition of article 3, section 18 of the constitution, unless excepted therefrom by force of section 25 of the same article. That section is as follows:

"SECTION 25. Section seventeen and eighteen of this article shall not apply to any bill, or amendments of any bill, which shall be reported to the legislature by commissioners appointed pursuant to law to revise the statutes."

It is a part of the legislative history of the state that prior to the adoption of the constitutional amendments of 1874 commissioners to revise the statutes had been appointed by the legislature, who had from time to time made reports of their proceedings to that body, and when the constitutional amendments were adopted they had not completed their labors but were still engaged in the work of the revision.

The plain object of section 25, article 3, which was one of the amendments adopted in 1874, was to exempt from the operation of section 18 private or local bills which had been, or should be, reported by the commissioners. But with the exception of bills originating with the commissioners and reported by them to the legislature the prohibition of section 18 is absolute. The language of the section needs no interpretation. Construed in connection with section 25 it forbids the enactment of any private or local law by the legislature in the cases enumerated therein and not falling within the exception in section 25. The legislative power vested in the senate and assembly is subject to the limitations of the constitution, and it needs no citation of authorities to show that the legislature, like every other department of the government, is subject to the supreme will of the people as expressed in the organic law.

If the proof offered by the defendant in support of his plea was admissible, and the facts offered to be proved were estab-

lished, there can be no doubt that the part of the act of 1881 relating to the selection and drawing of grand jurors in Albany county is unconstitutional. The intention of the act was to take Albany county out of the operation of the general statutes of the state relating to the selection and drawing of grand jurors, and to institute for that county a special system applicable to the county alone. But it is understood by the counsel for the people that the unconstitutionality of the act cannot be established by proof *aliunde* that the act was not reported to the legislature by commissioners. We have no doubt that the presumption in favor of the constitutionality of statutes applies in this case, and that in the absence of proof to the contrary it will be presumed, in support of the constitutionality of the act of 1881, that it originated in a bill reported by commissioners. But the question whether a statute is constitutional is in its nature a judicial one. The question most frequently arises upon the face of the statute itself, and the question of constitutionality is determined by comparing the statute with the constitution. But it often depends upon extrinsic facts not appearing upon the statute book. In cases involving the constitutionality of what are known as two-third bills it has been held that the court may go behind the statute book and look at the original bill to ascertain whether it was passed by the constitutional majority (*People* agt. *Purdy*, 2 *Hill*, 31; *S. C.*, 4 *Hill*, 384).

The case here is of the same nature, but arises upon a different limitation of legislative power. The proof offered did not contradict any fact asserted on the face of the statute, nor, so far as appears, in any legislative record. On the contrary, the offer was to show by the journal of the legislature and by the original act the facts averred in the plea. The constitution would afford very slight protection against legislative usurpation, and the object sought to be accomplished by the amendment in question, could be easily frustrated, if the mere fact that the legislature had passed a local or private bill in one of the enumerated cases, created a conclusive presump-

tion that the bill was originally reported by commissioners, and was within the exception of section 25. The tendency of judicial authority supports the proposition that whenever a question arises as to the constitutionality of a statute, the court may resort to any source of information, which in its nature is original evidence of any fact relevant to the inquiry (*Purdy* agt. *The People*, 4 *Hill*, 384; *Gardner* agt. *The Collector*, 6 *Wall.*, 499; *Post* agt. *The Supervisors*, 105 *U. S.*, 667; *Barry* agt. *Baltimore, &c., R. Co.*, 41 *Md.*, 446; *Opinion of Justices*, 52 *N. H.*, 623).

This rule excludes all inquiry as to the motives of the legislature in passing the particular statutes. Such an inquiry is wholly irrelevant, the only inquiry permitted being whether the enactment, the constitutionality of which is assailed, is forbidden by the constitution.

We think the offer to prove by the journal of the legislature and by the original act that the act of 1881 was not reported by commissioners, was properly overruled, and as the facts alleged must be deemed on this appeal to have been proved, the conclusion that the act, so far as it relates to the selection and drawing of grand jurors, is unconstitutional, cannot be avoided.

The question of the constitutionality of the act of 1881, so far as it relates to the selection of petit jurors, depends upon different considerations. When the act of 1881 was passed, there was a local act then in existence, regulating the selection of petit jurors in Albany county. By the existing law, which was enacted first by the Revised Statutes, and re-enacted by the Code of Civil Procedure in 1876, the selection of petit jurors in the city of Albany was committed to the supervisors and assessors of the respective wards of the city. The only change made by the act of 1881, as has been said, was to make the recorder the selecting officer, in place of the supervisors and assessors. There can be no doubt that the act of 1881, by which this change was wrought, was a local law. The point to be determined is whether it was a local law for the

selection of petit jurors within the sense and meaning of
article 3, section 18 of the constitution. It seems quite plain
that the amendment of an existing local law regulating the
selection of petit jurors, which simply transferred the power
to select the petit jurors within the city from one local officer
or set of officers to another local officer, is not within the
mischief at which the constitutional amendment was aimed.
By the existing local laws the city of Albany was taken out of
the general plan. The legislature by the act of 1881, left this
law in force, changing it only in the respect mentioned. The
qualifications of petit jurors were prescribed by the Revised
Statutes, and the provisions of the Revised Statutes upon the
subject were substantially resurrected in the Code in·1876
(2 *R. S.*, 411, *sec.* 13, *Code Civ. Pro., sec.* 1027.) It was made
the duty of the selecting officers to select from the last assess-
ment-roll of the town (or city) and to make a list of the names
of all persons whom they believed to possess the qualifica-
tions prescribed by the general statute (*Code Civ. Pro., sec.*
1036). This duty was in the main ministerial, and in the
city of Albany, prior to the act of 1881, was devolved upon
the supervisors and assessors of the ward, and by that act, on
the recorder.

We think it would be too strict a construction of the con-
stitutional provision to hold that no existing local law upon
the subjects mentioned in article 3, section 18, of the constitu-
tion can be amended in any detail, without violating the con-
stitution. This question was considered, to some extent, by
this court, in the *Rapid Transit cases* (70 *N. Y.*, 327; *Id.*,
361). In the cases first referred to, EARL, J., referring to the
section of the constitution now in question, said: "These
constitutional provisions do not prohibit a private corporation
by regulating powers, rights, privileges and franchises which
it previously possessed," and in the case last cited, CHURCH, J.,
referring to the same provisions, said: "They must be sus-
tained and applied by a rational and practical construction, so
as to subserve the purposes intended, and prevent the evils

designed to be remedied but not by an artificial and technical construction, to be extended in their application to cases never contemplated." It is a plain proposition recognized in the cases referred to, and in the subsequent case, *In re Brooklyn, &c.* (75 *N. Y.*, 375), that the legislature cannot, under the guise of an amendment of a private and local bill, make a new and original enactment in evasion of the constitutional prohibition.

The act of 1881, in reference to petit jurors, is not, we think, within this principle. It did not inaugurate a local system for the selection of petit jurors in the city of Albany, but, as we have said, continued an existing one, changing it in one of its details. Special laws have been passed and are now in force, regulating the selection of jurors in the counties of New York and Kings. These laws extend to great detail, and contain many special provisions. It would be a dangerous construction of the constitutional provision which would prohibit any alteration in those and like statutes, and place it beyond the power of the legislature to amend any of their provisions.

The question before us is not free from difficulty, but our conclusion is that a reasonable and practical construction of the constitution upholds the act of 1881 in respect to the substitution of the recorder in place of the supervisors and assessors to discharge the duty of preparing the petit jury lists, and that this conclusion fairly rests on the ground that the act is not, in a proper sense, an act for the selection of petit jurors, but a regulation of an existing local law on the subject, not within the purview of the constitutional prohibition.

The next question which arises is whether the arrangement and trial of the defendant upon the indictment in question was a violation of the constitutional guaranty that no person shall be held to answer for a capital or otherwise infamous crime (except in certain cases mentioned, not material to the present inquiry), "unless on presentment or indictment of a grand jury" (*Constitution, article 7, section* 6). It is insisted

on the part of the defendant that the body of men which found the indictment in question, was not a grand jury, that the paper filed as an indictment was not an indictment, and that the defendant could not be held to answer thereto, or be put upon his trial thereon. In considering this question it will be convenient, in the first place, to recall the actual facts. The objection to the constitution of the grand jury which found the indictment, lies solely in the fact that they were drawn, under the provisions of a void statute, from the petit jury list, whereas they should have been drawn from a list of grand jurors specially selected to serve as such by the supervisors of Albany county. In all other respects the proceedings were regular. The jurors were drawn by the proper officer, they were regularly summoned and retained by the sheriff; they were recognized, impanneled and sworn as grand jurors by the court, and as grand jurors they found the indictment; and moreover they were good and lawful men, duly qualified to sit as grand jurors. None of these facts are negatived by the plea, and they must be assumed in determining the question before us.

The principle that no person shall be put upon trial for an infamous crime unless on presentment or indictment of a grand jury, has been regarded as one of the securities of civil liberty, and is embodied among the fundamental provisions of the federal and state constitutions. The institution of the grand jury has been said, by high authority, to be one of the barriers between the liberties of the people and the prerogatives of the crown (4 *Blk.*, 349). The interposition of a body of competent citizens, charged to inquire of offenses between the individual and the state, and the finding of a formal accusation upon such inquiry, before he can be put upon his trial for an infamous crime, forms the substance of the right guaranteed by the law of England and by the constitution of the state. But the constitution does not define what shall constitute a grand jury. It refers to the grand jury as an existing institution, and its essential character must be found by reference to

the common law, from which it has been derived. By the common law a grand jury must consist of not less than twelve or more than twenty-three, and twelve must concur in finding an indictment; and they must be good and lawful men of the county (*Hawk. B. C.* [*vol.* 2], *chap.* 25, *sec.* 16 ; *Chitty's Crim. Law* [*vol.* 7], 307). The constitution does not define the mode of selection, and it has never been supposed that the states, in adopting the common law institution of the grand jury, adopted the mode of selection which prevailed in England. In England grand jurors were formerly selected by the sheriffs (2 *Hawk. P. C., chap.* 25, *sec.* 76), but in this state the sheriff is the summoning and not returning officer, and has no part in the selection or preparation of the grand jury ; and it is doubtless competent for the legislature to enact such regulations and make such changes respecting the mode of selecting and procuring grand jurors as it may deem expedient, not trenching, however, upon the essential features of the system (*People* agt. *Stokes*, 53 *N. Y.*, 164).

We are of opinion that no constitutional right of the defendant was invaded by holding him to answer to the indictment. The grand jury, although not selected in pursuance of a valid law, were selected under color of law and semblance of legal authority. The defendant, in fact, enjoyed all the protection he would have had if the jurors had been selected and drawn pursuant to the general statutes. Nothing could well be more substantial than the alleged right asserted by the defendant under the circumstances of the case. He was entitled to have an indictment found by a grand jury before being put upon his trial. An indictment was found by a body drawn, summoned and sworn as a grand jury, before a competent court, and composed of good and lawful men. This, we think, fulfilled the constitutional guaranty. The jury which found the indictment was a *de facto* jury, selected and organized under the forms of law. The defect in its constitution, owing to the invalidity of the law of 1881, affected no substantial right of the defendant. We confine

our decision upon this point to the case presented by this record, and hold that an indictment found by a grand jury of good and lawful men, selected and drawn under color of law, is a good indictment by a grand jury within the sense of the constitution, although the law under which the selection was made is void. It will be time to consider the extreme cases suggested by counsel when occasion rises.

The remaining question relates to the right of the defendant to avail himself by plea, or objection in other form, of the defect in the proceedings in selecting or drawing the grand jury which formed the indictment. If the defect in the constitution of the tribunal deprived it of the character of a grand jury in a constitutional sense, there can be no doubt that the court would have been bound to take notice of it, although no statute authorized it, or even if the statute assumed to preclude the raising of the objection. But when the defect is not of that character, and the defendant may be held to answer the indictment without invading any constitutional right, then the question is one of procedure merely, and the right of the defendant to avail himself of the objection is subject to the regulation and control of the legislature.

In times past courts have been inclined to go very far in sustaining technical objections in criminal cases, but there is much less reason for this now than formerly, when comparatively trivial offenses were punished with the greatest severity. The indictment in question was found after the Code of Criminal Procedure was enacted and took effect, and the proceedings are governed by its provisions. We are of opinion that under the provisions of the Code the court was justified in refusing to entertain the objections made. Section 328 prohibits any challenge to the panel or array of grand jurors, but the court is authorized, in its discretion, for certain causes stated, to discharge the panel and order another to be summoned. Section 239 provides for challenges to individual jurors. Both of these sections relate to proceedings to be taken before indictment, and are irrelevant to the present

The People agt. Petrea.

inquiry. Section 312 provides that in answer to an indictment the defendant may either move the court to set the same aside, or may demur or plead thereto. The causes for which the defendant may move to have the indictment set aside, are defined in section 313. Section 321 declares that the only pleading on the part of the defendant, is a demurrer or plea, and section 332 declares that pleas are of three kinds: (1) guilty ; (2) not guilty; (3) a former judgment of conviction or acquittal.

The paper filed by the defendant was not a plea authorized by the section last mentioned, and the motion to quash or set aside the indictment is not for any cause embraced in section 313. The Code, by defining the causes for which the indictment may be set aside, must, by the general rule of construction, be held to exclude the entertaining of the motion, for other causes than those testified. The intention of the Code was to discourage technical defenses to indictments, not affecting the merits, as is apparent from the sections cited, as well as the provisions relating to amendments, and the proceedings on the trial (*Code Crim. Pro., secs.* 293, 362). This general purpose is more directly indicated by section 285, which declares " that no indictment is sufficient, nor can the trial, judgment or other proceedings be affected by reason of an imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendant upon the merits. We think the objection to the grand jury was not one which, by the new procedure, the defendant could take after indictment, and, as it involved no constitutional right, that it was properly overruled.

These reasons lead to an affirmance of the judgment.

All concur.