· JAMES F. THRIFT, Comptroller,

*vs.*

ALBERT G. TOWERS.

*Acts of the Legislature*: *passage; amendment. Presumptions*:
*not to be impeached by Journals alone.· Reading of title.*

The amendment of a bill, by striking out all after the words
"A Bill," and substituting or inserting in lieu thereof an entire
new bill, is in accordance with universal legislative procedure,
and is not in conflict with section 27 of Article 3 of the Consti-
tution.                                                    p. 58

When a bill is properly authenticated, it can not be impeached
by the Journals alone, or by oral testimony that some provision
of the Constitution was not observed in its passage. ·        p. 61

There is no constitutional provision requiring the title of a
bill to be endorsed upon the back of a bill; and where the *origi-
nal* title of a bill was endorsed upon the back of a new bill,
which by amendment had been substituted for the original bill,
this is not sufficient to authorize the presumption that in the
reading of the bill as it was in process of being passed by the
Legislature, the proper title was not read.                  p. 60

*Decided November 11th, 1915.*

Appeal from the Superior Court of Baltimore City.
(Duffy, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*S. S. Field, the City Solicitor for Baltimore City,* for the appellant.

*W. Cabell Bruce,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellee, Albert G. Towers, was appointed on May the 4th, 1914, a member of the Public Service Commission of Maryland for the term of six years, and on the same day qualified and entered immediately upon the discharge of his duties as such commissioner. Under the Act of 1914, Chapter 750, as printed in the Public Laws of 1914, there became due him by the Mayor and City Council of Baltimore the sum of $240.62 for services rendered as a member of the Public Service Commission between May 4, 1914, and August 1, 1914. He made application to James F. Thrift, the Comptroller of Baltimore City, for a warrant upon the City Register for the payment of the sum claimed to be due. Mr. Thrift declined to issue the warrant, having been advised that the Act under which the claim was made was invalid. On the 23rd of February, 1914, the appellee filed a petition for a mandamus against the Comptroller in the Superior Court of Baltimore City to compel the payment of the money claimed. The trial, upon the issues joined upon the pleadings in the case, resulted in an order of that Court dated April 19th, 1915, directing a writ of mandamus to issue against the Comptroller commanding him to draw his warrant, or to give his approval to the City Register for the pay-

ment to the petitioner, out of the treasury of the Mayor and City Council of Baltimore, for the sum of $240.62, being the amount claimed in the petition. The appeal before us was taken by the Comptroller from that order.

The single question in the case is the validity *vel non* of the Act of 1914, Chapter 750. While the answer assailed the Act upon a number of grounds, one of these only will be considered for the reason that all the other objections were set up and decided adversely to the appellant in the case of *Thrift* v. *Laird, Comptroller,* 125 Md. 55.

The Act of 1914, Chapter 750, is entitled:

"An Act to repeal and re-enact with amendments, that portion of section 2 of Chapter 180 of the Acts of the General Assembly of Maryland of the year 1910, relating to the compensation of the members of a public service commission."

The Act contains three sections, and the first section is here transcribed as it appears in the printed volume of the Laws of 1914:

"*Be it enacted by the General Assembly of Maryland,* That all that portion of section 2 of Chapter 180 of the Acts of the General Assembly of Maryland of the year 1910, reading as follows: 'The salary of each of said Commissioners shall be three thousand dollars ($3,000) per annum, payable out of the State Treasury by the State of Maryland; and in addition to said sum of three thousand dollars per annum, the Chairman of said Commission shall also receive the sum of three thousand dollars per annum, which shall be paid out of its funds by the Mayor and City Council of Baltimore to said Chairman of said Commission as an employee of said municipal corporation; and each of the other two Commissioners shall receive, in addition to said three thousand dollars per annum aforesaid, the sum of two thousand dollars ($2,000) per annum, which shall be paid out of its funds by the

Mayor and City Council of Baltimore to each of said other two Commissioners as employees of said municipal corporation,' be and the same is hereby repealed and re-enacted with amendments so as to read as follows: 'The salary of each of said Commissioners shall be three thousand dollars ($3,000) per anum, payable out of the State Treasury of the State of Maryland; and in addition to said sum of three thousand dollars per annum, each of said Commissioners shall also receive the sum of three thousand dollars ($3,000) per annum, which shall be paid out of the funds by the Mayor and City Council of Baltimore to the members of said Commission as employees of said municipal corporation.'"

This Act, as printed, is free of all constitutional objection, and if it was actually passed as printed, we must, adhering to our decision in the case of *Thrift v. Laird, supra,* affirm the order appealed from, because the *sole* ground upon which the payment of the money is resisted is the alleged unconstitutionality of the Act. Before stating and considering the single objection which we regard as open for decision on this appeal, a statement of the legislative history of the bill will be given.

On February 17, 1914, Mr. Mudd introduced into the Senate a bill entitled "An Act to amend Article 23 of the Code of 1912 of Public General Laws of Maryland, titled 'Corporations,' sub-titled 'Public Service Commission,' by adding a new section to follow section 462 and to be known as section 462-A, the same providing for the forfeiture of corporate rights, powers and franchises upon failure to comply with certain orders of the commission requiring adequacy of public service."

The bill was then numbered Senate Bill No. 287, and this number and the exact title, as above transcribed, was entered upon the Senate Journal. The bill was then read the first time, and referred to the Committee on Judicial Proceed-

ings. Nothing further appears to have been done with respect
to this bill until March 31, 1914. On that date Mr. Benson,
from the Committee on Judicial Proceedings, reported the
bill favorably with amendments. The bill was reported by
its original title. The amendment proposed by the Com-
mittee was this: "Amend by striking out all after the word
'A Bill,' and insert in lieu thereof the following." The
amendment as proposed by the committee appears at large in
Volume 2, page 265, of the Senate Journal, and is identical
in title and contents with the Act of 1914, Chapter 750, as
printed. The report was laid over under the rules, but on
the same day, upon motion of Mr. Cooper and by the vote
of 27 senators, the rules were suspended, and the bill put
upon its second reading. The proposed amendment and the
favorable report were adopted, and the amended bill was
read the second time and ordered to be printed for a third
reading. The effect of the amendment was the substitution
of an entire new bill for the bill introduced by Mr. Mudd
on February 17, 1914. This method of substituting by
amendment an entire new bill is in accordance with universal
legislative procedure, and is supported by high authority
(*vide* Jefferson's Manual Section XXV, pg. 75), and it is
not seriously contended that it violates section 27, Article 3,
of the Constitution.

The bill was printed as amended, for a third reading, that
is to say, precisely as it now appears in the published laws of
1914, and in addition thereto, there was printed, on the
outside of one of the pages or wrappers, the title of the orig-
inal bill with endorsements thereon, made by the secretary
of the Senate before the amended bill was sent to the printer.

It should be stated in this connection that while the
amendment proposed by the Committee on Judicial Proceed-
ings was spread upon the Journal of the Senate, and that
when the amended bill passed its first and second readings
in the Senate it was indicated upon the Journals of the
Senate and House through every stage of its legislative

progress simply by the title which it bore at the time of its introduction in the Senate, with nothing appearing on the Journal of the House to indicate the amendment.

On April 2nd, 1914—three days after the amended bill had been ordered printed for a third reading—the Senate Journal contains this entry:

> "Senate bill, No. 287, entitled 'An Act to amend Article 23 of the Code of 1912 of Public General Laws of Maryland, title "Corporations," a sub-title "Public Service Commission," by adding a new section to follow section 462 and to be known as section 462A, the same providing for the forfeiture of corporate rights, powers and franchises upon failure to comply with certain orders of the Commission requiring adequacy of public service.' Which was read the third time and passed by yeas and nays."

Twenty-six senators voting in the affirmative and none in the negative. The bill was then sent to the House of Delegates bearing on the outside page the original title and endorsed: "Read the third time and passed by yeas and nays." The Journal of the House, as before stated, referred to the bill by its original title, and shows that the bill was received by the House on April 3rd, 1914, and was read the first time on that day, and referred to the Committee on Judiciary, which made a favorable report thereon on April 4th, and that the report was adopted, and that the bill was read the second time on April 4th, 1914. On April 6th, 1914, the bill, to which the Journal refers as Senate bill No. 287 and which was designated by its original title, was read a third time and passed by yeas and nays,—70 members voting in the affirmative and none in the negative. The bill was signed by the Governor on April 13th, 1914.

Upon these facts the appellant contends that the Act is invalid, because the title of the Act as printed is not the title which the bill carried through every stage of its passage in both Houses, and which still appears on the printed Act

signed by the Governor and in the custody of the Clerk of the
Court of Appeals; that in all its readings in the Senate and
House and in its final passage in each branch of the General
Assembly it was read and passed by its original title, that is
to say, with the same title it bore when introduced by Mr.
Mudd on February 17, 1914. If this contention be estab-
lished the Act must be declared void, because under such a
title no act could be validly passed repealing and re-enacting
a portion of section 2, Chapter 180 of the Act of 1910 (p.
342), and increasing the salaries of members of the Public
Service Commission. Such attempted legislation, under such
a title, by all the authorities, would be a clear violation of
section 29, Article 3 of the Constitution. The endorsements
on the bill and the Journal entries in both houses show the
passage of some bill, and the one signed by the Governor is
the bill attacked in this case. The amended bill, complete
in itself, was before both houses, although it had attached to
it on the wrapper the original title and the endorsements
made before amendment. There is no evidence to show the
original title was read after the amendment was adopted.
The Journals do not so show. It was merely referred to by
the original title. The bill was amended and passed its third
reading in the Senate three days after the amendment, which
was entered at large on the Senate Journal. The Senate was
aware of its action, and with this knowledge are we to refer
the entry as to the reading of the amended bill, which had a
complete title and a complete text, to the *original* title and
not to the *new* and *amended* title? Such a holding would be
unreasonable, and would impute to the Senate ignorance of
its own proceedings. There is no requirement of the con-
stitution that the title shall appear on the back of the bill,
and, if it be conceded, that the bill was possibly or probably
read in the House by its original title, this would not be suf-
ficient to justify the Court in declaring it void. When a bill
is properly authenticated it cannot be impeached by the
Journals alone, or by oral testimony that some provision of

the constitution was not observed in its passage, and certainly the inference that the bill was read by its original title drawn from the fact that the printer by mistake or inadvertence printed the original title on the back of the amended bill is not sufficient to justify the Court in striking the Act down. To establish his position the appellant was bound to show by competent and clear evidence that the original title *alone* was read. Mere inferences, possibilities, and probabilities will not do. The ground of the attack must be plainly and clearly established. The rule which holds that a duly authenticated and published Act is presumed to have been validly passed, and that this presumption cannot be rebutted unless it appears by clear and competent evidence that some requirement of the constitution has been disregarded in the passage of the bill rests upon sound principles of reason and public policy. In dealing with the question here presented it must "be borne in mind that there is a wide distinction between taking up an act which has been passed by the Legislature, comparing it with the constitution, and declaring whether its provisions are in accord with that instrument or not, and looking into the details of the method of procedure by the legislative bodies in passing the act and the regularity of the steps which they took in so doing. The Court declares the law. If there are two statutes in apparent conflict the Court must determine which is the controlling one, or the existing law. If a statute and a provision of the constitution are set up as being in conflict with each other, the Court must compare the two and determine if such a conflict in fact exists, and, if so, that the constitution must prevail. But this is not the same thing as going into the details of legislative procedure, critically examining the methods of a co-ordinate department of the government, and declaring that its members have failed or refused to obey constitutional directions or commands as to the manner in which they should perform their duties, because of an entry, or the absence of an entry, on the journal kept by some clerk or subordinate employee.

The latter proceeding is at best a matter of delicacy, and not to be indulged in by the Courts unless plainly required by the constitution. The Legislature is one of the three departments of the government. Its members and officers are sworn to support the constitution; and in discharge of their duties they are acting under oath. Where the constitution directs or commands them to take certain steps in a certain way, or not to enact a law without some prescribed antecedent procedure, their oath includes the obligation to enact the measure in the constitutional manner, or not to enact it without the happening of the constitutional event thus provided. In the imperfection of all human institutions, legislatures may sometimes, through inadvertence or even through design, violate the constitution, but the courts will not lightly conclude that they have intentionally or unintentionally violated rules of conduct laid down for them by the constitution in the transaction of their business. The clerical officials who keep the legislative journals must necessarily do so in the haste and pressure of business; and memoranda, often hurriedly made, must be relied on by them. Assistants and subordinates are employed to aid them. As between the question whether the president of the Senate and the speaker of the House, aided by the enrollment committees, all of whom are charged with the duty of seeing that the constitutional rules are enforced, have, through incompetence or corruption, violated that duty, and signed and sent to the Governor an act which had not in fact been passed in the constitutional manner, and that the Governor, who is also sworn to obey the constitution, has likewise inadvertently or unintentionally approved an act which has not been lawfully passed, or, on the other hand, that some journalizing clerk or assistant has made a mistake in the preparation of the journal, courts will be more ready to adopt the latter theory than the former." *DeLoach et al.* v. *Newton,* 134 Ga. 739.

The Maryland rule upon this question has been stated in the cases of *Fouke* v. *Fleming,* 13 Md. 392; *Berry* v. *Drum Point Railroad Co.,* 41 Md. 463; *Fidelity Warehouse Co.* v.

*Canton Lumber Co.,* 118 Md. 135; *Ridgely* v. *Baltimore City,* 119 Md. 567 and *Jessop* v. *Mayor and City Council,* 121 Md. 562. In *Berry* v. *Drum Point Railroad Co., supra,* the Court said: "Unquestionably, where an Act has been duly authenticated and published as law by authority, the presumption is, that all the constitutional solemnities and prerequisites necessary to its valid enactment have been complied with; and this presumption exists until the contrary is clearly made to appear. But when it can be made clearly to appear, as in this case it has been, that the particular bill or section of a bill, although it may have all the forms of authentication, has never in fact received the legislative assent, we think the Court is bound to look not only behind the printed statute book, but beyond the forms of authentication of the bill as recorded in the office of this Court, and if the evidence be clear and entirely satisfactory to the mind of the Court, to decide accordingly."

The learned City Solicitor presented his contention with great earnestness and ability but we do not find that it is supported by the character of evidence required by the law of this State, and, therefore, we must affirm the judgment.

> *Judgment affirmed, the appellant to pay the costs.*